PEOPLE *ex rel.* WESTON *v.* McCLAVE *et au.,* Police Commissioners.

*(Supreme Court, General Term, First Department.* June 6, 1890.)

1. MUNICIPAL CORPORATIONS—DISCHARGE OF POLICEMAN—SPECIFICATIONS.
   Relator was charged with conduct unbecoming an officer, and the specification was that, being a police sergeant, he engaged in an altercation at the station-house

with a fellow-sergeant. The evidence showed an unprovoked assault by relator. *Held*, that an objection that the specification did not sustain the charge was untenable.

**2. SAME—REVIEW ON APPEAL.**
Where, in proceeding before the police commissioners, the evidence is conflicting, their action cannot be reviewed, though some injustice may have been done.

**3. WITNESS—EXAMINATION—SELF-CRIMINATION.**
The provision of Const. N. Y. art. 1, § 6, that "no person shall be * * * compelled in any criminal case to be a witness against himself," does not apply to an investigation by police commissioners of a charge against a police sergeant for conduct unbecoming an officer. DANIELS, J., dissenting.

*Certiorari* to review the action of the police commissioners in dismissing the relator, Cornelius Weston, from the police force.
Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.
*Louis J. Grant*, for relator.    *J. J. Delany*, for respondents.

BRADY, J. The charge against the relator was conduct unbecoming an officer, and the specification was that, being then a sergeant of police, and attached to the eighth precinct, he engaged in an altercation on the 22d of May, 1889, at the station-house of that precinct, with Sergeant Myron Allen. He was regularly tried before the commissioners, adjudged guilty, and sentenced to dismissal. It is urged by the relator's counsel that the specification did not sustain the charge, inasmuch as an altercation does not amount *per se* to conduct unbecoming an officer, as it might result from an assault committed upon him by another, and which would naturally and justly inspire all the violence necessary for self-defense. Here, however, the evidence shows that an unprovoked assault was committed by him on Allen.

It is objected that the relator was called upon to testify at the beginning of the investigation as the first witness, and on the proposition that no person should be compelled in a criminal case to be a witness against himself, as declared by the constitution. But this is neither a criminal prosecution nor in the nature of a criminal prosecution, and therefore not within the provision of chapter 678 of the Laws of 1869. It is really a matter of discipline, which the board of police have a right to establish, and is consistent with the necessary rules and regulations of the department, and one by which the purposes of its organization can be carried out and investigations made without the application of strict legal rules. *People* v. *Police Com'rs*, 93 N. Y. 97. In that case the court said: "The action of the board of police in such instances must be considered, having in view the special powers conferred and the purposes for which their organization was intended, and not confined by the application of strict legal rules which prevail in reference to trials and proceedings in courts of law." The charge against the relator was of conduct unbecoming an officer, the specification being that he engaged in an altercation with another sergeant. The question presented, therefore, was whether he did so engage in an altercation as to be guilty of conduct unbecoming an officer and a gentleman. This, as already stated, is a pure matter of discipline, the object of which was to sustain the *morale* of the force, a very important feature in promoting its efficacy and insuring for it public dependence and respect. The relator, when he appeared to answer the charge in accordance with the notice given him, did not deny the charge. At least no denial appears upon the record. It is probable that it was this circumstance which determined the action of the board of police commissioners in favor of his immediate examination, and which they proceeded to take against the objection of his counsel. This it would seem they had a right to do, under the decision *supra*, which is regarded as controlling, for the reasons assigned. This mode of procedure appears to be harsh, but that view doubtless results from a prejudice against it arising from judicial experience, and the familiarity and importance of the rule that a man should not be called upon to testify against himself in any matter which may have serious

results until a case is made out against him, at least. *prima facie;* but such a proceeding as this is not, as we have seen, within that rule.

It is also insisted that the testimony as to the origin of the trouble is directly in conflict, and that Allen's testimony when he was proceeded against was discredited, having been contradicted by four witnesses, and his charge that he was attempting to arrest the relator herein was disproved, and therefore his testimony should not be accepted as sufficient to sustain the charge against the relator. The commissioners, however, were vested with all the authority necessary to dispose of that question, and the conclusion, if it were reached in the prior prosecution of Allen, that he was not worthy of belief furnishes no conclusive reason why he should not be believed herein. As was said in the case of the *People* v. *Police Com'rs, supra,* "assuming the rule to be that the facts involved in the determination are satisfactorily supported by the evidence, so that the verdict of a jury finding such facts could not be set aside as against the weight of evidence, we are unable to see how it can be claimed that the decision of the commissioners was not justified." And again, in *People* v. *French,* 110 N. Y. 494, 18 N. E. Rep. 133, it is said: "The government of a police force assimilates to that required in the control of a military body, and the interference of an extraneous power in its practical control and direction must always be mischievous and destructive of the discipline and habits of obedience which should govern its subordinate members." Both parties were assailants, each charging the other with having commenced the fracas without provocation, and both, by the result of the dismissal here appealed from, are punished. This naturally suggests that some injustice may have been done, inasmuch as it rarely happens that violence is used by two antagonists at the same instant. But this can make no difference in the application of the rule imposing upon the commissioners the duty, and conferring upon them the power, to determine a question presented upon conflicting evidence. No reason has been discovered calling upon us to interfere with the dismissal appealed from, and it must be affirmed.

VAN BRUNT, P. J. I do not think that the point as to the relator's examination is well taken. He did not object upon the ground that he could not be examined because his testimony might tend to criminate him, but he simply objected to being examined until a case had been made against him, which objection was properly overruled. If he had objected to being examined upon the ground that his evidence might tend to criminate him, then the question discussed by Mr. Justice DANIELS might have arisen, but it does not arise upon this record. I concur in the conclusion arrived at by Mr. Justice BRADY.

DANIELS, J., (*dissenting.*) The relator held the position of sergeant in the police force, and was charged with conduct unbecoming an officer, the specification of which was that, on the 22d of May, 1889, he engaged in an altercation with Sergeant Myron Allen in the eighth precinct station-house at the termination of his tour of duty. Precisely what was meant by this charge that he had engaged in an altercation did not appear from the specification; but it was developed by the evidence taken upon the hearing that these two persons had engaged in a wrangle and wordy contest, followed by an assault and battery committed by one upon the other, which was a criminal offense. The charge was in this manner extended and tried before the commissioners, and evidence was given which tended to establish the fact that the relator had committed an assault and battery upon Allen. When the hearing commenced the relator was called as a witness before the commissioner, who took the testimony, and it was objected in his behalf to his giving evidence until a case had been made against him; and, when he was asked what had occurred between himself and Sergeant Allen, the objection was made more specific,

and the ground was taken that he could not be called upon to testify against himself until a case was made out against him, and witnesses called to sustain the charge. This was overruled, and an exception was taken on behalf of the relator, and he was then required to proceed, as he did, in giving his version of what had taken place between himself and Sergeant Allen, and his evidence disclosed the fact that personal violence had been made use of both by himself and by Allen; but his statement substantially was that the violence made use of by him was in his own defense. This, however, was unimportant, if he was not liable to be required to take the stand and swear as a witness in support of the charge which had been made against him.

The constitution of the state of New York, by section 6, art. 1, has declared that "no person shall be * * * compelled, in any criminal case, to be a witness against himself;" and the legality of the ruling made by the commissioner depends upon the construction which this prohibition of the constitution should receive. It is true that it was no part of the object of the proceedings to punish the relator for the commission of a criminal offense, but its object was, as it turned out to be, to prove him to have been guilty of what was a criminal offense, and for that reason to forfeit his office, and justify his removal. And, in case an adverse result should be reached under the charge made against the relator, then the consequences would be so serious to him as to be in the nature of punishment for a crime; for a forfeiture of his office, with its salary and prospective advantages by way of a final pension, was as serious to him as personal confinement and punishment could be; and this forfeiture depended, as the charge was construed and tried before the commissioners, upon proof of what the law maintains to be the commission of a criminal offense. It is true that it was not serious in its results, being no more than an assault and battery. But the constitution does not permit any discrimination in this respect between grave and trifling offenses. Its prohibition applies alike to all, that no person in a criminal case shall be compelled to be a witness against himself.

A like provision is contained in the constitution of the United States, and its effect was discussed and considered in *Boyd* v. *U. S.*, 116 U. S. 616, 6 Sup. Ct. Rep. 524. There the charge was, by way of information, and not of an indictment for a crime, that plate-glass had been imported into the United States in violation of the revenue laws, and was liable to forfeiture for that violation. A claim was made on behalf of the importer to this property based upon a denial of the violation of the revenue laws, and he was required to produce the invoices of the glass to support the proceedings taken against the property on behalf of the United States. This requirement was made by an order held at the time to be warranted by an act passed on the 22d of June, 1874, providing that in other than criminal proceedings the defendant or claimant might be required to produce his books, invoices, or papers in court as proofs relating to the subject-matter of the charge. Under this order or notice the claimant produced the invoices of the glass, and they were allowed, against his objection, to be proved in support of the prosecution upon the trial of the cause; and, after an adverse result to the claimant of the property, the case was taken to the supreme court of the United States, where it was held, inasmuch as the act charged in the information was a criminal act, although the proceedings had for its object no more than the forfeiture of the claimant's property, that he could not be obliged to produce his books or papers to aid the United States in prosecuting the action against and for a forfeiture of his property. The decision was in part placed upon article 4 of the amendments to the constitution of the United States, declaring that the right of the people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and it was held by the majority of the court that this part of the article had been violated by requiring the claimant to produce these papers, and their use upon the trial. So it was

**also held by** the entire court that so much of article 5 as declared that no person shall be compelled in any criminal case to be a witness against himself had also been violated by obtaining and using the invoices in this manner. And this decision is a direct authority in support of the objection which was taken in behalf of the relator before the commissioner; for the proceedings there could result in no more than a forfeiture of the property itself against which it had been instituted. Still, as the violation of the revenue laws was of itself a crime, although not alleged to be such in the information, and as a crime was incapable of being tried in that form of proceeding, the court held that the claimant was entitled to the protection of this provision of the constitution; and for equal reason the same protection should have been afforded to this relator. For, while the object of the proceeding was to secure no more than the forfeiture of his office and his removal therefrom, yet the right to make that removal depended, as the proceeding was carried on, upon the ability to establish the fact that the relator had committed an assault upon Sergeant Allen, which was a criminal offense. There is no substantial distinction between the application of the constitution as it was made in the case already mentioned and the application which should have been made of it in the case of the relator. If he had been guilty of an act justifying his removal from his office it was a criminal act, although not charged as such. While it was no part of the object of the proceedings to inflict criminal punishment upon him, it was to forfeit his office, and all his prospective rights and privileges under it, because he had committed an act which in another mode of proceeding might result in his criminal punishment. The objection which was taken in his behalf should not have been overruled. He should not have been required to be a witness in behalf of the prosecution against him. The provision of the constitution is highly salutary, and it should be liberally applied to promote the result which it was designed to maintain. In this respect his constitutional right was violated, and the proceedings should be reversed.