In the Matter of the Judicial Settlement of the Final Account of MARY M. WRIGHT (Formerly MARY McCLUNG PARDEE) and MANUFACTURERS AND TRADERS TRUST COMPANY (Formerly M & T TRUST COMPANY), as Executors, etc., of JESSE HOMAN PARDEE, Deceased.

FLORA PARDEE KITCHEN, MARGARET CROW, JEAN K. GODILLOT, MARTHA PARDEE KITCHEN, JULIA MARGARET K. WILDER, and WILLIAM R. POOLEY, as Special Guardian for ROBERT PARDEE CROW and JOHN PARDEE GODILLOT, Infants, Appellants; VIRGINIA SECURITIES, LIMITED, and MARY M. WRIGHT (Formerly MARY McCLUNG PARDEE), Individually and as Executrix, etc., Respondents.

Fourth Department, March 6, 1940.

*Isaac J. Silin*, for the adult appellants.

*William R. Pooley*, as special guardian, appellant.

*Killeen & Sweeney [James C. Sweeney* of counsel], for the respondents Virginia Securities, Limited, and Mary M. Wright, individually and as executrix.

*Franchot, Runals, Cohen, Taylor & Rickert,* for the executors.

*Babcock, Hollister, Brown & Newbury,* for the Manufacturers and Traders Trust Company.

*John Van Sickle,* for Mary M. Wright.

McCURN, J. This is an appeal from an order of the surrogate of Erie county denying a motion to vacate and set aside the decision of Special County Judge and Acting Surrogate F. BRET THORN and denying the request of the special guardian for a reargument.

The controversy in Surrogate's Court arose upon the accounting of the executors in the estate of Jesse Homan Pardee, deceased. Objections were filed to the account by the parties who are the appellants herein. A complete hearing was had but the surrogate died before rendering a decision.

Upon filing the order required by section 8 of the Surrogate's Court Act in the Erie county clerk's office on July 21, 1939, Special County Judge THORN became the acting surrogate of Erie county. On August 8, 1939, the acting surrogate rendered and filed in the Surrogate's Court a decision based upon the evidence presented by the parties before the death of the surrogate.

On August 8, 1939, Hon. MICHAEL J. MONTESANO was appointed surrogate of Erie county by the Acting Governor of the State. A copy of the commission appointing Surrogate MONTESANO, bearing date August 8, 1939, was filed in the county clerk's office of Erie county on August 11, 1939. Surrogate MONTESANO's official oath was filed in the county clerk's office of Erie county on August 9, 1939. His official bond was also filed in the county clerk's office of Erie county on August 9, 1939.

A motion, returnable September 7, 1939, before Surrogate MONTESANO was made by the appellants " for an order vacating and setting aside the opinion or decision of THORN, Special County Judge and Acting Surrogate." The special guardian joined in the motion and asked for a reargument. Surrogate MONTESANO denied the motion. This appeal is taken from the order denying the motion.

It is the contention of the appellants that Judge THORN's authority as acting surrogate ceased at the time Judge MONTESANO's commission was made and issued to him on August 8, 1939. We do not know the exact time that the Acting Governor issued Judge MONTESANO's commission except that it must have been some time before eleven-twelve A. M. when he filed an oath of office with the Secretary of State. The record is not clear as to what time on August eighth Judge THORN made and filed his decision.

The authority of the acting surrogate, prior to the issuance of

the commission to Surrogate MONTESANO, is not in issue. The appellants proceed upon the assumption that the authority of the acting surrogate terminated upon the issuance of the commission to Surrogate MONTESANO. Proof that the decision was rendered and filed after the commission had been issued is lacking. Even if the appellants were correct in their assumption we think that the decision under review was correct.

Upon the death of the surrogate the special county judge was required to discharge the duties of the office of surrogate " *until the vacancy is filled.*" (Surr. Ct. Act, § 8.) The pertinent question here is " when is the vacancy filled." The Legislature must have intended by the use of these words to continue such authority in the county judge until a new surrogate authorized to perform the duties of the office comes into existence. The Constitution vests in the Governor the power to appoint the new surrogate (Art. 6, § 16), but it also provides that *before entering upon his official duties* he shall take and subscribe his oath of office (Art. 13, § 1). The statute which carries this constitutional provision into effect reads in part (Public Officers Law, § 10): " Every officer shall take and file the oath of office required by law *before he shall be entitled to enter upon the discharge of any of his official duties.* * * * The oath of office of every *State officer* shall be filed in the office of the *Secretary of State;* of every officer of a municipal corporation, with the clerk thereof; and of every other officer, in the office of the *clerk of the county in which he shall reside,* if no place be otherwise provided by law for the filing thereof." The newly-appointed Surrogate MONTESANO subscribed and filed an oath with the Secretary of State on August eighth. He subscribed and filed his oath also with the county clerk of Erie county on August ninth. Section 231 of the County Law provides: " Every person elected or appointed to the office of surrogate or county judge, where there is no separate office of surrogate, shall, *before he enters upon the duties of his office,* and if appointed, within fifteen days after notice thereof, execute and deliver to the county clerk of his county a joint and several undertaking, * * * *which undertaking shall be immediately filed in the office of such county clerk.*" Surrogate MONTESANO complied with this section on August ninth by filing his undertaking with the county clerk of Erie county.

Was he a State officer who complied with the law as to filing of oaths when he filed his oath in the Secretary of State's office on August eighth, or was he a local officer who did not comply with that requirement until he filed his oath and official undertaking with the county clerk on August ninth? Section 2 of the Public Officers Law states: " The term ' State officer ' includes every officer

for whom *all the electors of the State are entitled to vote,* members of the Legislature, justices of the Supreme Court, Regents of the University, and every officer, appointed by one or more State officers, or by the Legislature, and authorized to exercise his official functions throughout the entire State, or without limitation to any political subdivision of the State, except United States Senators, Members of Congress, and Electors for President and Vice-President of the ʟUnited States. The term ʻ local officer ʼ includes every other officer who is elected by the *electors of a portion only of the State,* every officer of a political subdivision or municipal corporation of the State, and every officer limited in the execution of his official functions to a portion only of the State."

The surrogate is elected by the electorate of the county. One of the qualifications of the office is that he be a resident of the county. He exercises his official functions within the county. His salary is paid by the county treasurer. He is a local officer and not a State officer within the meaning of the statutes requiring the filing of official oaths and undertakings prerequisite to assuming official functions of the office. The Legislature must have so intended when it provided in section 231 of the County Law that the surrogate file his official undertaking with the county clerk. State officers are required to file such an undertaking with the State Comptroller.

We have given consideration to the cases which point out that surrogates are constitutional officers and members of the judicial system of the State, and as such are State officers. These cases for the most part involve the application of the Workmen's Compensation Law, Civil Service Law or the City Charter of New York city. The instant case involves the application of the Public Officers Law in the matter of oaths. The language of section 2 and section 10 makes it clear that a surrogate is required to file his oath of office with the county clerk. He shall take and file his oath *before he shall be entitled to enter upon the discharge of any of his official duties.* (Public Officers Law, § 10.)

Section 15 of the Public Officers Law, by which official acts performed before filing the official oath or undertaking are validated, is not intended to nullify the provisions of section 10 of the Public Officers Law, above referred to. The purpose of that section is to protect the rights of third persons after such an officer has acted without compliance with the statute.

Inquiry in this case need go no further than to determine whether Judge THORN was at least a *de facto* officer. The controlling facts which determine that question are: Judge THORN had since July twenty-first been authorized to and actually did perform the

functions of the office of surrogate to the knowledge of the public. His successor, Judge MONTESANO, although commissioned by the Acting Governor on August eighth, was not authorized to discharge the duties of his office pursuant to the statute until he filed his oath and undertaking on August ninth, and he did not actually assume to take over the office until that time. To do so would constitute a misdemeanor. (Penal Law, § 1820.) There is nothing in the record to show that Judge THORN had any notice on August eighth, when he signed the decision, that his authority as acting surrogate had terminated or that in fact the Acting Governor had appointed his successor. From the conduct of Judge THORN and Judge MONTESANO it would appear that each acted upon the assumption that the vacancy was filled when Judge MONTESANO filed his oath and undertaking on August ninth. That Judge MONTESANO was of that understanding is clear from his opinion printed in the record. The record discloses no evidence of anything other than good faith. Judge THORN acted under the color of right; his acts were acquiesced in by the successor; he was at least a *de facto* officer, and as such his act in signing and filing his decision in the instant case must be deemed to be valid.

The order appealed from denies a request by the special guardian for a reargument. It is asserted that the special county judge gave no consideration to the decision but signed the same as a mere formality. There is no proof in the record that such is the case. The decision itself seems complete upon its face and no omissions or irregularities are pointed out. The surrogate, in my opinion, properly refused the request for a reargument.

The order should be affirmed, without costs of this appeal to any party.

All concur. Present — CROSBY, P. J., CUNNINGHAM, DOWLING, HARRIS and McCURN, JJ.

Order affirmed, without costs of this appeal to any party.