In the Matter of the Application of DAVID GOLDWAY, Petitioner, for an Order against THE BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, New York County, September 11 1942.

*Mulligan, Hill & Dibbell [William O. Mulligan* and *Charles W. Dibbell* of counsel], for the petitioner.

*William C. Chanler, Corporation Counsel [Charles C. Weinstein* and *Bernard Friedlander* of counsel], for the respondent.

*Osmond K. Fraenkel* and *Sidney A. Harris*, for American Civil Liberties Union as *amicus curiæ*.

HOFSTADTER, J. The petitioner, David Goldway, was formerly employed as an assistant teacher of English at Townsend Harris High School. It is conceded that the petitioner on April 23, 1941 appeared at a public hearing of the Joint Legislative Committee to Investigate the Educational System of the State of New York

in answer to a personal subpœna served upon him and declined to sign a waiver of immunity. Because of this refusal the petitioner was directed to leave the witness stand and was not sworn nor did he give any testimony.

On May 12, 1941 a resolution was adopted by the Board of Higher Education pursuant to section 903 of the New York City Charter terminating the services of the petitioner. He now seeks an order of reinstatement under article 78 of the Civil Practice Act.

Section 903 provides in part that " if any councilman or other officer or employee of the city shall, after lawful notice or process, wilfully refuse or fail to appear before * * * any legislative committee * * * or shall refuse to waive immunity from prosecution * * * his term or tenure of office or employment shall terminate and such office or employment shall be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency."

The petitioner contends that the statute is unconstitutional; and that in any event as an employee of the Board of Higher Education he is not within its purview.

The privilege against self-incrimination is not as ancient as many of our other constitutional safeguards; indeed, it may be said to be of comparatively recent origin. Taking account of its genesis, some competent students of constitutional limitations have suggested that it has outlived its sanction; and that now, it is more mischievous than salutary in its operation. Respectable authorities may readily be invoked in support of its extinction; and it is generally agreed, I think, that in all events, it should be withdrawn altogether from public officers and employees whose official conduct is under scrutiny. However all this may be, it is clear that the statute under attack here is not violative of any constitutional restriction since there is no denial of the privilege against self-incrimination.

The Legislature did not purport to abrogate the right; it undertook to exercise its discretion as to the wisdom of retaining in public service an employee who exercised the privilege when his official acts are under review. It cannot be said that it is so manifestly unreasonable as to be beyond its constitutional competency for the State to determine that it is not salutary for it to continue in its employ a person who obstructs an investigation into his public conduct by a refusal to waive immunity. Clearly it is a legislative prerogative — and not for the courts to review its wisdom — to say that it is proper that public officials should not be permitted to hold office and at the same time shield themselves by a claim of privilege in the course of an investigation of their official acts.

The Charter provision does not preclude any city employee from refusing to testify or compel him to waive immunity; indeed, that privilege was accorded to and the right was exercised by this petitioner. It does not follow that upon such refusal, constitutionally he must be permitted to retain his office. Whether the claim of privilege should be a valid ground for dismissal, becomes a matter for the controlling wisdom of the law making power. For the right to hold public employment is a privilege which may reasonably be qualified by legislative action; and I conceive that such a qualification as set forth in section 903 may not be said to be so unreasonable as to justify the courts in striking down the statute. As Mr. Justice HOLMES epitomized it in a case involving cognate considerations, " the petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." (*McAuliffe* v. *New Bedford*, 155 Mass. 216; 29 N. E. 517.)

The petitioner was " an employee of the city " within the intendment of section 903 of the New York City Charter. It is obvious that section 903 is intended to be all inclusive; to relate to all employees of the city or any of its agencies paid out of funds of the city treasury. The Board of Higher Education is a State instrumentality as is the Board of Transportation. Yet, in *Ferdinand* v. *Moses* (26 N. Y. Supp. 382; affd., 262 App. Div. 1001), the court sustained the propriety of the dismissal of an employee of the latter under section 896 of the New York City Charter which similarly provides that " any   *   *   *   employee of the city who shall   *   *   *   commit any fraud upon the city   *   *   *   shall forfeit his   *   *   *   employment." I am unable to distinguish this case from the facts here set forth. (See also *Matter of Schaefer* v. *Rathmann*, 237 App. Div. 491; affd., 262 N. Y. 492; *Matter of Dieter* v. *Ryan*, 267 id. 594.)

Accordingly, the motion is denied.