In the Matter of JAMES A. DELEHANTY, as Third Deputy Police Commissioner of the City of New York, Petitioner. JOHN F. SULLIVAN, Respondent.

Supreme Court, Special Term, New York County, August 20, 1952.

**34**

*Denis M. Hurley, Corporation Counsel* (*Victor J. Herwitz, Seymour B. Quel* and *Milton Mollen* of counsel), for petitioner.

*Irving Mendelson* for respondent.

*James H. Tully* and *Truman H. Luhrman* for Patrolmen's Benevolent Association of the City of New York, *amicus curiæ.*

SAYPOL, J.  This is an application by James A. Delehanty, as third deputy police commissioner of the city of New York, for a warrant, pursuant to section 406 of the Civil Practice Act, committing the respondent John F. Sullivan to jail.

Section 406 of the Civil Practice Act furnishes a coercive method, utilizing the aid of the judiciary, to compel a person subpœnaed and attending or brought before a person authorized by law to hear, try or determine a matter, reasonably to be examined or to answer a legal and pertinent question.  It is not the same as punishment for contempt (Judiciary Law, art. 19, §§ 750–781).  In fact, it calls for but one conclusion, when warranted in the opinion of the judge or justice, commitment to jail of the offender until there has been compliance.  The contemnor, on the other hand, may be punished by fine or maximum imprisonment of thirty days.  In short, the instant remedy is coercive to compel testimony; the contempt power is punitive.  (See *Matter of Barnes,* 204 N. Y. 108, and *Matter of Clark,* 65 Conn. 17.)  Of the importance of the remedy provided in section 406 of the Civil Practice Act, I need but quote GRAY, J., speaking for the majority in *Matter of Barnes* (*supra,* p. 113) who, when discussing the provisions of law which preceded section 406 (Code Civ. Pro., §§ 854–856), said: " This statute is, and always has been, a valuable instrumentality in the administration of justice and the enforcement of laws."

The respondent and other police officers have been charged with grave misconduct and corruption, in respect of which the petitioner is conducting a departmental trial. Petitioner caused a subpœna to be served upon the respondent, and on the return, he was directed by the petitioner to take the stand and be examined. The respondent refused to do so on the grounds (1) that petitioner was not qualified because he is over age (see Administrative Code of City of New York, § B3–38.0) and, therefore, he was without authority to conduct the trial and issue the subpœna; and (2) that the amendment to subdivision i of paragraph 14 of article 5 of the Police Department Manual, of Procedure, made on February 7, 1952, could not validly be applied to this petitioner. (Minutes of Hearing, Aug. 14, 1952, pp. 2336–2338.)

Respondent urged before petitioner that petitioner was over the age of seventy-three years at the time of his appointment and that under section B3–38.0 of the Administrative Code the petitioner was not duly qualified. That precise question has already been adjudicated adversely to respondent (*Matter of Kapple* v. *Monaghan,* N. Y. L. J., July 23, 1952, p. 127, col. 1; *Evans* v. *Monaghan,* N. Y. L. J., May 12, 1952, p. 1894, col. 4).

The respondent now raises for the first time the additional grounds for petitioner's disqualification of irregularity because there was no two-day notice of the calling of the meeting of the board of estimate which issued the certificate approving petitioner's appointment and that petitioner has not taken the oath of office, pursuant to the provisions of the appropriate statutes.

The petitioner was appointed as third deputy police commissioner on April 25, 1952, and it is conceded that shortly thereafter he took his oath of office. Approval of the board of estimate, however, was not obtained until May 8, 1952. Subsequent to such approval no further oath of office was taken by petitioner. Respondent contends that petitioner should have taken another oath after the approval of his appointment by the board of estimate. Failing so to do, petitioner's authority is attacked.

" Every officer shall take and file the oath of office required by law before he shall be entitled to enter upon the discharge of any of his official duties " (Public Officers Law, § 10). It is well settled, however, that the failure of such officer to take the prescribed oath of office will not prevent him from discharging his duties (*Horton* v. *Parsons,* 37 Hun 42; *People*

*ex rel. Woods* v. *Crissey,* 91 N. Y. 616; *Foot* v. *Stiles,* 57 N. Y. 399; *Weeks* v. *Ellis,* 2 Barb. 320; *Supervisors of Schoharie Co.* v. *Pindar,* 3 Lans. 8; *Greenleaf* v. *Low,* 4 Denio 168).

Even if it were to be assumed that the petitioner is not a *de jure* officer, he is in any event holding the office of third deputy police commissioner *de facto.* (See Constantineau on The De Facto Doctrine, § 136, and cases cited; 43 Am. Jur., Public Officers, § 483; 30 Am. Jur., Judges, §§ 100–102.) In Constantineau (*loc. cit.*) the rule is stated as follows: " The American authorities are generally unanimous in upholding the rule, that the failure of an officer to take the prescribed oath of office will not prevent him from becoming an officer *de facto.*" " The acts of an officer *de facto,* although his title may be bad, are valid so far as they concern the public or third persons who have an interest in the thing done." (3 McQuillin on Municipal Corporations [3d ed.], § 12.106; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185, 212–215, CULLEN, Ch. J. concurring; *People ex rel. Griffing* v. *Lister,* 106 App. Div. 61; *Matter of Hannon* v. *Wagner,* 273 App. Div. 819. See, further, *Curtin* v. *Barton,* 139 N. Y. 505; *Sylvia Lake Co.* v. *Northern Ore Co.,* 242 N. Y. 144, certiorari denied 273 U. S. 695; *Matter of Pardee,* 259 App. Div. 101, and Note, 144 A. L. R. 1207.) In *Matter of Sherrill* v. *O'Brien* (*supra,* pp. 212–213) the court said: " But though the appointment or election of a public officer may be illegal, it is elementary law that his official acts while he is an actual incumbent of the office are valid and binding on the public and on third parties. * * * The doctrine is not one of convenience merely but of necessity." And in *Sylvia Lake Co.* v. *Northern Ore Co.* (*supra,* p. 147) the Court of Appeals stated: " It is a well-established principle, recognized in all jurisdictions that, so far as the public and third persons are concerned, the official acts of a *de facto* judge are just as valid as those of a *de jure* judge."

The second broad contention advanced by respondent is that an amendment to subdivision i of paragraph 14 of article 5 of the Police Department Manual of Procedure, made on February 7, 1952, cannot validly be applied to this respondent.

The police commissioner as the head of the police department is empowered to make rules and regulations for the conduct of his department and to carry out its powers and duties. No rule or regulation made by him except such as relate to the organization or internal management of the department shall be effective until it is filed in the office of the city clerk (New

York City Charter, § 885). The police commissioner as the chief executive officer of the police force is chargeable with and responsible for the execution of all orders and the rules and regulations of the department (New York City Charter, § 434). Rules and regulations of the police department have been promulgated pursuant to the charter provisions; and in addition thereto there are in use other regulatory provisions contained in what is described as the Manual of Procedure of the Police Department of the City of New York. Presumably the manual is intended for the internal management of the department and, therefore, does not require filing or the other formalization prescribed in section 885 of the New York City Charter for rules and regulations.

The respondent bases his attack on an amendment, made on February 7, 1952, to the provisions of the Manual of Procedure. This amendment was made subsequent to the date of the commission of the alleged offenses contained in the charges which are the subject matter of the trial before Commissioner Delehanty.

It may be observed that this Manual of Procedure in its foreword recites that it " is designed to effectively carry out in detail the Rules and Regulations " of the police department.

Formerly subdivisions h and i of paragraph 14 of. article 5 of the manual read as follows:

" h. The accused shall be given an opportunity to testify under oath in his own behalf, and be subject to cross-examination by the department.

" i. If the accused does not desire to testify under oath, he shall be given an opportunity to make or give a statement in his own behalf not under oath."

Subdivision i was amended on February 7, 1952, to read as follows: " At any stage of the proceedings, the Trial Commissioner may require the accused to take the stand and give sworn testimony ". It is significant that the introduction to paragraph 14 of article 5 of the manual, which was not amended, provides: " The following procedure for the trial of a member has been adopted by the department. Departure therefrom shall not invalidate the proceedings unless it be conclusively shown in writing, addressed and delivered to the Police Commissioner, within twenty-four hours after the case is closed that such departure adversely or injuriously affected the rights of the accused."

Complaint is not made by respondent that the commissioner had no authority to make the amendment. However, it is contended that the amendment is ex post facto when applied to his case.

It is elementary that the doctrine of ex post facto is applicable only to criminal or penal statutes (*Brearley School* v. *Ward,* 201 N. Y. 358). This disciplinary trial is not a criminal proceeding. '' The proceedings could result at most in fines, dismissal of the plaintiffs from the police force, and perhaps in the loss of their pensions '' (*McGillicuddy* v. *Monaghan,* 201 Misc. 650, 652, affd. 280 App. Div. 144). Certainly the respondent in this disciplinary proceeding is not subject to the risk of any imprisonment on the basis of any findings made by the trial commissioner.

In *People ex rel. Weston* v. *McClave* (57 Hun 587, opinion in 10 N. Y. S. 764, 765) the court said: '' But this is neither a criminal prosecution nor in the nature of a criminal prosecution * * *. It is really a matter of discipline, which the board of police have a right to establish, and is consistent with the necessary rules and regulations of the department, and one by which the purposes of its organization can be carried out and investigations made without the application of strict legal rules. *People* v. *Police Com'rs.,* 93 N. Y. 97.'' The decision in that case was affirmed by the Court of Appeals (123 N. Y. 512, 515–517), the court stating: '' But the proceedings of the board of police commissioners are not governed by any particular rules of procedure, other than their own. The statute (Chap. 180, Laws 1884) authorizes the board to adopt rules for the examination, hearing and determination of charges against members of the force. It guards the rights of the accused member, by providing that the charges shall be in writing and shall be investigated upon a reasonable notice to him. This power to regulate the manner of procedure in the trial of an accused member is, in the nature of things, reasonable, and strict conformity with the modes of procedure in courts of law is not expected, nor essential. The proceedings are disciplinary in their nature. For the maintenance of the police force in the most efficient state possible, especial powers are conferred upon the commissioners by the statute, and great latitude is allowed them in the exercise of those powers. The tenure of the policeman's office must necessarily be dependent upon his implicit obedience to the disciplinary rules which his superiors establish, and though entitled to a trial upon any

charge, involving subjection to punishment, that trial is, practically, simply an examination of the matter; whereat the accused can be present and be heard in defense or excuse. Such an examination is not like a trial in a court of law and, for its legal correctness, it is only required that no rule of law shall have been violated, nor unwarrantable punishment be inflicted. * * *. His objection was, in effect, that the commissioners ought to make out a case against him before he should be compelled to testify. We see no propriety in that, and if the commissioners chose, in their investigation, to question the accused first, about the circumstances of the case, there was no rule of law which militated against their doing so. It is in their power to proceed in their investigation of the facts in any manner they choose, and if, in the course of so doing, the legal rights or privileges of the accused are violated, he has the right to a review of the proceedings in the courts.''

In *Matter of Roge* v. *Valentine* (280 N. Y. 268, 278–279) the court stated: ''We are not now concerned with technical rules of evidence. In disciplinary proceedings before a Police Commissioner or other administrative officer, rules of evidence or proof devised for trials in court may prove impractical and unsuitable. We have said that then some latitude must be allowed ' as to rules of evidence, methods of examination and the like, but no essential element of a fair trial can be dispensed with unless waived, and no vital safeguard violated without rendering the judgment of conviction subject to reversal upon review.' (*Matter of Greenebaum* v. *Bingham,* 201 N. Y. 343, 347.) ''

The court further stated (p. 280): '' We think that a practical man of affairs would be bound to reach that conclusion and so would a student trained in methods of search for the truth other than the methods embodied in our common law rules of evidence and burden of proof. Doubt arises when common law rules devised for judicial trials and of proven value there are applied to a disciplinary proceeding before an administrative officer. There we preserve the spirit of the rules, but we reject the letter. There may be room for possibility of injustice in every case where the law places upon an accused the *burden* of explaining acts which though giving rise to justified suspicion of wrong, are themselves equivocal. A police officer who knowingly receives moneys under circumstances here disclosed should not be heard to complain when his departmental superiors *require* him to explain his act which without such explanation

would destroy his usefulness as a police officer. A police officer is guilty of serious fault when he does an act even without evil intent which tends to destroy confidence in his integrity and honesty." (Italics supplied.)

The privilege of public employment is subject to reasonable terms laid down by the proper authorities. (Cf. *Garner* v. *Los Angeles Board*, 341 U. S. 716; *Adler* v. *Board of Education*, 342 U. S. 485.) As stated in *Matter of Goldway* v. *Board of Higher Educ. of City of N. Y.* (178 Misc. 1023, 1025) : " For the right to hold public employment is a privilege which may reasonably be qualified by legislative action; and I conceive that such a qualification as set forth in section 903 [of the New York City Charter] may not be said to be so unreasonable as to justify the courts in striking down the statute. As Mr. Justice HOLMES epitomised it in a case involving cognate considerations ' the petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.' (*McAuliffe* v. *New Bedford*, 155 Mass. 216 * * *.) "

Under the circumstances, the motion is granted. Settle order on two hours' notice.