In the Matter of the COMMISSION OF INVESTIGATION OF THE STATE OF NEW YORK, Respondent, against CARMINE LOMBARDOZZI and COSTENZE PETER VALENTI, Appellants.

In the Matter of the COMMISSION OF INVESTIGATION OF THE STATE OF NEW YORK, Respondent, against FRANK JOSEPH VALENTI, ROSARIO MANCUSO, JOSEPH RICCOBONO, PAUL CASTELLANO and MICHELE MIRANDA, Appellants.

First Department, December 9, 1958.

50

*Maurice Edelbaum* of counsel (*Sol Jacobson* with him on the brief; *Maurice Edelbaum,* attorney), for Carmine Lombardozzi, appellant.

*Gilbert S. Rosenthal* of counsel (*Aaron J. Jaffe* and *Samuel Di Gaetano* with him on the brief; *Gilbert S. Rosenthal,* attorney), for Frank Joseph Valenti and Costenze Peter Valenti, appellants.

*Anthony J. Fernicola* for Rosario Mancuso, appellant.

*Joseph E. Brill* of counsel (*Nicholas P. Iannuzzi* and *Sol Jacobson* with him on the brief; *Joseph E. Brill* and *Nicholas P. Iannuzzi,* attorneys), for Joseph Riccobono, appellant.

*Abraham H. Brodsky* of counsel (*Joseph E. Brill, Sol Jacobson* and *Nicholas P. Iannuzzi* with him on the brief; *Abraham H. Brodsky,* attorney), for Paul Castellano and Michele Miranda, appellants.

*Eliot H. Lumbard* of counsel (*Nathan Skolnik, Justin J. Finger, Arnold Weiss* and *Alfred Donati, Jr.,* with him on the brief; *Eliot H. Lumbard,* attorney), for respondent.

BASTOW, J. We consider together appeals by seven respondents in separate proceedings seeking a review of orders made at Special Term. Procedural differences in disposing of the applications at Special Term require the preliminary statement that five respondents (Frank Valenti, Mancuso, Riccobono, Castellano and Miranda) appeal from orders made by SPECTOR, J., and two respondents (Lombardozzi and Peter Valenti) appeal from orders by TILZER, J.

In August, 1958 the appellants were served with subpoenas issued by the Commission of Investigation of the State of New York commanding them to appear at a public hearing being conducted by the commission in New York City. At the first hearing on August 12, 1958 the chairman announced that the hearing was being held in connection with what is now known as the Apalachin meeting in November, 1957, at the residence of one Joseph Barbara in Tioga County. The purposes of the hearing were stated to be, among other things, " Whether the crimes of conspiracy, violation of section 340 of the General Business Law which pertains to monopoly or restraint of trade statutes, and bribery of public officials or any other crimes were committed or planned at this meeting." There followed individual hearings for each of the appellants commencing on August 12 and ending on August 19. Each was represented by one or more counsel at the hearings and in the subsequent court proceedings.

The pattern of the proceedings when each appellant appeared before the commission was much the same. Each was asked a series of questions numbering between 30 and 40. Responsive answers to these questions would have been relevant to one of the subjects of the investigation as stated in each subpoena to be " the organization, purposes and participants of, and discussions had and decisions made at " the Apalachin meeting. Other than identifying themselves, appellants refused to answer all questions. Such refusals were based on the privilege against

self incrimination and other grounds, most of which are presented upon this appeal and will be hereinafter considered.

Following the respective refusals to answer questions, the members of the commission purporting to act under statutory authority (L. 1958, ch. 989, § 7) voted to and did purport to confer immunity upon each appellant in accordance with section 2447 of the Penal Law. Each witness was then informed that he had immunity " from prosecution by the New York State authorities on account of any transaction, matter or thing of a criminal nature which may be revealed by your truthful and responsive answers to the particular questions which this Commission * * * may now direct you to answer." Thereafter, each appellant was asked some 26 questions which were among those previously propounded. Again each witness refused to answer the questions upon stated grounds. The direction was made that the questions be answered but each appellant persisted in his refusal.

We consider first the ensuing court proceedings relating to the five appellants who appeared before the commission on August 12, 13 and 15. As to each, individual orders were obtained directing the named witness to show cause, either forthwith or upon the same day that he had testified, why a warrant should not issue for his apprehension and commitment forthwith to jail there to remain until he answered the questions. The show cause order was supported by an affidavit of the commission chairman and a copy of the subpoena. Following a hearing in each case, and to which we shall advert subsequently, the applications were granted and warrants issued for the imprisonment of the five appellants until each answered the questions set forth in the warrant.

The other two appellants were brought before Special Term the day after the commission's hearing. In the interim, transcripts of the commission's hearing were forwarded to the court and counsel. Upon request of these appellants an adjournment of two days was granted. At that time appellants produced certain witnesses and while they complain of erroneous rulings in the course of the examination of these witnesses, it does not appear from either record or briefs that they attack the validity of the court hearings upon the ground that there was a summary determination without an adequate hearing. At the conclusion of this combined hearing the applications were granted and similar warrants issued for the imprisonment of the witnesses.

It is against this background that we consider the various contentions of the appellants. It is claimed that the act

(L. 1958, ch. 989) creating the respondent commission is uncon-stitutional and in violation of the State constitutional provision (art. V, § 3). To place in focus this contention it is necessary to point out that section 2 of article V of the Constitution provides for 19 civil departments in the State Government. Section 3 then provides in part that "No new departments shall be created hereafter, but this shall not prevent the legislature from creating temporary commissions for special purposes".

Turning to the enactment (L. 1958, ch. 989) under attack we find in section 1 the provision that "There is hereby created a temporary state commission of investigation." The four commissioners are to be appointed for a term of five years (§ 2) and the act is to remain in effect for five years (§ 13). Judged by any standards the commission is a temporary one and so at least one appellant concedes in his brief. It is unnecessary to recite in detail the functions, powers and duties set forth in the 11 subdivisions of section 2 of the act. We construe them as being "special purposes" within the meaning of the language set forth in the exception to the constitutional prohibition against the creating of new State civil departments.

One of the landmark decisions construing this constitutional provision is *Matter of People* (*Westchester Tit. & Trust Co.*) (268 N. Y. 432). There is was held that an act creating a Mortgage Commission and transferring to it the powers vested in the Superintendent of Insurance to control and administer mortgage investments of guarantee companies came within the plain intendment of the constitutional provision. The court placed emphasis upon the abnormal if not emergency conditions that existed. The court stated (p. 443) that such conditions "call for prompt action and, in the opinion of the Legislature, no department is now equipped for such action. The Commission is created for the special purpose of prompt and effective action during the period when there is special need for prompt and effective action by a public agency properly equipped for that purpose."

In *Matter of Di Brizzi* (*Proskauer*) (303 N. Y. 206) the court passed upon the right of the Governor and Attorney-General to create by joint action a State Crime Commission under the provisions of subdivision 8 of section 63 of the Executive Law. In upholding the validity of the action it was said (p. 216) that "This is a *general* investigation into *organized* crime and its relation to government. As an incident thereto, it may be that the existence of specific, individual crimes will be uncovered, but that will merely be collateral and subordinate to the main object of inquiry. The purpose of the investigation is to secure

information to guide executive action, not to indict or punish any individuals.'' The statute under consideration authorizes similar general investigations for the guidance of both the Executive and the Legislature. Pursuant to its legislative power (N. Y. Const., art. III, § 1) the Legislature was vested with power to enact the statute and we conclude that it was not violative of section 3 of article V.

The appellants make various attacks upon the immunity conferred upon them by the commission. Section 7 of the enactment (L. 1958, ch. 989) provides in substance that in any investigation or hearing conducted by the commission, relating to any crime with respect to which, by express statutory provision, a competent authority is authorized to confer immunity, such may be conferred by the commission in accordance with the provisions of section 2447 of the Penal Law, '' but only after affording the attorney-general and the appropriate district attorney the opportunity to be heard in respect to any objections which they may have to the granting of such immunity.'' Without attempting to consider seriatim the contentions of the several appellants, we state our views that lead to the conclusion that immunity was properly conferred upon each appellant.

The commission, as has been noted, placed upon the record that it was investigating, among other things, whether the crimes of conspiracy or bribery of public officials had been committed. (Penal Law, §§ 378, 580.) By express statutory authority (Penal Law, §§ 381, 584) certain named officials and bodies are authorized to confer immunity in accordance with section 2447 of the Penal Law. The act under consideration extended this authority to the commission. At the hearings each appellant was carefully informed of such grant and the extent of the immunity flowing therefrom. This is found in subdivision 2 of section 2447 where it is stated that '' immunity '', as used therein, '' means that such person shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with the order by competent authority, he gave answer or produced evidence, and that no such answer given or evidence produced shall be received against him upon any criminal proceeding.'' The immunity so conferred was not limited to the crimes the commission had stated it was investigating. It was complete immunity whether the answers given might involve the witness in the crimes of bribery or conspiracy or any other crime provided, of course, that the answers were truthful and responsive to the questions. Thus, appellants received immunity coextensive with their privilege against self incrimination. (N. Y. Const., art. I, § 6.)

Appellants further contend the proffered immunity was worthless since the facts were not disclosed regarding communications between commission, the Attorney-General of the State, and various District Attorneys. An indicated above, section 7 of the act creating the respondent (L. 1958, ch. 989) provides that its right to confer immunity is to be exercised only after affording the Attorney-General and the appropriate District Attorney the opportunity to be heard in respect of any objections which they may have to such grant of immunity. In passing it might be noted that a similar provision is found in section 2447 (subd. 3, par. [d]) of the Penal Law. This section was enacted as a result of recommendations filed by the New York State Crime Commission in 1953. (See Third Report of N. Y. State Crime Comm.; N. Y. Legis. Doc., 1953, No. 68, pp. 14–16.) After recommending therein that the power to grant immunity be given to a " competent authority " which was defined, among other things, as " a majority of a legislative * * * commission ", it was said (p. 16) : " The legislation might also provide that any official or official group, other than a court, authorized to grant immunity, before so doing should as a matter of course consult with the appropriate district attorney."

When requested in these proceedings, the commission informed each appellant that it had afforded the Attorney-General and the appropriate District Attorney an opportunity to be heard in compliance with section 7 but refused to specify the details thereof. We find no error in that decision. The grant of immunity was absolute. It appears to have been the legislative intent that before such extensive power was exercised by the commission, as a matter of governmental comity, it should give certain public prosecutors an opportunity to be heard to enable them to induce the commission to withhold the granting of such immunity for reasons advanced, which might have been unknown or overlooked by the commission. But the opportunity to be heard was not a restriction on the power. If objections were made by prosecutors and not heeded by respondent, the witness would not be the less protected. Assuming the commission acted improvidently in the face of objections it might be subject to correction in an official forum or otherwise. Such eventual correction, regardless of what effect it might have on the commission, individually, or as a body, could not detract from the immunity already granted. Thus, in stating that the Attorney-General and appropriate District Attorney had been afforded an opportunity to be heard, the respondent sufficiently complied with the statute. It was not for

appellants to go further into the matter. When the immunity is granted it is not at the peril of the witness but at the peril of the commission if it fails to comply with the requirements of the statute.

Lastly, upon this subject, the appellants claim that the immunity so conferred was invalid since it does not protect them from subsequent prosecutions by Federal authorities. This question has been recently passed upon by this court in *People* v. *Costello* (6 A D 2d 385) in the light of *Knapp* v. *Schweitzer* (357 U. S. 371). In the *Costello* case (p. 387) we said that "Although the potential exposure to Federal prosecution asserted by appellant seems reasonable enough, since the Federal Government might form an interest in the answers which he could give concerning the written notations on the paper found in his pocket, this exposure is not a ground for excusing the answers where the immunity which flows from State law is as adequate as the State can make it against its own subsequent prosecution. (*Dunham* v. *Ottinger*, 243 N. Y. 423.) This rule is not, of course, open to re-examination here. (Cf. dissenting opinions by BLACK and DOUGLAS, JJ., in *Knapp* v. *Schweitzer, supra*, p. 383.) "

The appellants, however, renew their claims as to the inadequacy of the conferred immunity upon the ground that one of the functions of the commission is to "cooperate with departments and officers of the United States government in the investigation of violations of the federal laws within this state." (L. 1958, ch. 989, § 2, par. 5.) This does not alter our opinion as expressed in the *Costello* case (*supra*). As we understand the *Knapp* case (*supra*) the crucial holding was that the sole "purpose of the Fifth Amendment privilege against self-incrimination is the security of the individual against the exertion of the power of the Federal Government to compel incriminating testimony with a view to enabling that same Government to convict a man out of his own mouth." (357 U. S. 371, 380.) It has been heretofore found that the State conferred upon appellants complete immunity. It is unnecessary for this court to speculate as to what the effect of this might be in the event of subsequent Federal prosecution under circumstances here open only to conjecture. The test is whether the immunity gives protection against State prosecution — " all that the State is required to or can do is to give immunity against its own processes and, if it has done that, as this statute does it, it has satisfied the requirements of the Constitution." (*Dunham* v. *Ottinger*, 243 N. Y. 423, 438.)

In sum, every person owes a duty to the State to testify when called before a duly constituted authority. However, he may

not be compelled to testify when he claims his privilege against self incrimination. But that privilege disappears when the State removes any danger of criminal prosecution — based on any testimony he may give — by granting immunity securing the witness against such prosecution. Hence, when immunity is properly tendered to a witness claiming his constitutional privilege, he must answer or suffer the consequences of his contumacy. The object of the constitutional privilege is fully accomplished when immunity is granted.

We recognize that in *Knapp* v. *Schweitzer* (*supra*) the court posed but left unanswered the question as to whether, in the case of collaboration between State and Federal officials, a defendant might successfully assert his privilege in the State proceeding. Moreover, it is suggested therein that evidence so obtained might be excluded in a Federal prosecution. This suggestion is re-enforced by the views expressed by some of the Justices in separate opinions that the rule enunciated in *Feldman* v. *United States* (322 U. S. 487) should be reconsidered. All of this presents a wide area for judicial discussion. This court, however, in the absence of the expression of a contrary view by the Supreme Court, is bound by the rule of law enunciated in *Dunham* v. *Ottinger* (243 N. Y. 423, 438, *supra*). There, as heretofore stated, it was held that the State is only required to give immunity against its own processes and when that is done the constitutional requirements have been satisfied.

Finally, the appellants contend that the commission pursued the wrong remedy in bringing these proceedings pursuant to section 406 of the Civil Practice Act. Moreover, they claim that if the section is applicable the proceedings at Special Term were conducted in such a manner as to be violative of the due process clauses of the State and Federal Constitutions. The appellants argue that the witnesses, if they are in contempt, may only be prosecuted in a criminal proceeding concerning such contempt (Judiciary Law, § 750). Section 406 provides, in substance, that when a witness, such as these appellants, attending before a body, such as respondent, " refuses without reasonable cause * * * to answer a legal and pertinent question * * * the person issuing the subpœna, if he is a judge of a court of record, or not of record, may forthwith, or if he is not, then any judge of such court may upon proof by affidavit of the facts, by warrant commit the offender to jail, there to remain until he submits to do the act which he was so required to do or is discharged according to law." The distinction between this section and the provisions of the Judiciary Law (art. 19) is that the latter are punitive in nature whereas section 406 is

coercive alone. (Cf. *Matter of Delehanty* [*Sullivan*], 202 Misc. 33, affd. 280 App. Div. 542, affd. 304 N. Y. 725.)

In *Matter of Barnes* (204 N. Y. 108) the court considered a like provision then found in section 856 of the Code of Civil Procedure. Judge GRAY wrote (p. 113) that " This statute is, and always has been, a valuable instrumentality in the administration of justice and the enforcement of laws.'' We find no authority that required the commission to proceed to invoke the punitive provisions of a criminal contempt as distinguished from its applications for coercive relief to compel the witnesses to testify.

A more troublesome question is presented as to whether appellants were accorded due process in connection with the court proceedings on August 12, 13 and 15. In *Matter of Barnes* (*supra*) one of the questions before the court was whether a summary conviction under the predecessor section violated a constitutional right. Some of the members of the court were of the opinion (1) that a summary conviction without notice violated no constitutional right and (2) that even if notice were necessary, the court could read into the section a provision requiring notice to be given. A majority of the court, however, while disagreeing with the first proposition held (p. 122) that the language of the section " may be so construed as to require notice to one charged with the contempt, and that when read in connection with the provisions of the Judiciary Law relating to criminal contempts, the question is removed from the realm of doubt.''

In these proceedings there can be no question that notice was given in the form of show cause orders based upon an affidavit made by the chairman of the commission setting forth in some detail service of the subpœna and the ensuing proceedings before the commission. A transcript of the testimony in each proceeding was made available to the court and counsel for the witness. The disturbing feature of the proceeding is what took place in Special Term in connection with five of these appellants. As has been stated heretofore, these witnesses were brought before Special Term on the same day each had been called to testify. All requests for adjournments were denied. There was, however, a hearing and counsel for each appellant advanced in various ways many of the same contentions that are presented to this court and discussed herein. A careful reading of the record of the five proceedings discloses that, in substance, each counsel requested additional time to submit a brief or examine the law. Counsel was of the opinion that there were many intricate questions of law that should be explored. The court

was of the opinion that the legal questions were simple and should be passed upon at once. We do not find any request for an adjournment to enable appellants to produce evidence either documentary or by witness. The precipitate haste with which the proceedings were conducted does not meet with our approval. However, the ultimate question is whether there was any prejudice to appellants amounting to a denial of due process because they were denied adjournments so their counsel could examine the law and submit briefs. After the passing of weeks we have examined the same questions, together with others advanced by appellants, and determine that Special Term was correct in its legal decisions and in the action taken.

The contentions of the remaining two appellants that they were not accorded due process are without substance. As to them, adjournments were granted when counsel stated that they desired to submit proof. Subsequently, witnesses were called in an attempt to prove co-operation between State and Federal law enforcement agencies as bearing upon the completeness of the granted immunity. What has heretofore been written upon this subject makes it clear that such testimony was irrelevant and properly excluded. The same conclusion is reached as to the court's rulings excluding testimony relating to the notice given by the commission to other State prosecutors before conferring immunity.

It has been said that "The due process clause does not guarantee to the citizen of a state any particular form or method of state procedure. * * * Its requirements are satisfied if he has reasonable notice and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it." (*Dohany* v. *Rogers,* 281 U. S. 362, 369.) When the contentions of appellants are considered in the light of this legal principle it cannot be found that there was any denial of due process. They received reasonable notice. Some had been subpœnaed two weeks before the date of their appearance. Each was represented by counsel and after complete immunity had been granted each persisted in his refusal to testify.

Thereupon, they were brought before Special Term in proceedings instituted pursuant to section 406 of the Civil Practice Act. The burden then placed upon appellants to justify their refusal to answer the questions was the establishment by them of a sufficient cause for which a reason could be and was given. The reasons so advanced consisted of legal contentions that the creation of the commission was unconstitutional and that

the immunity conferred was either defectively accomplished or not adequate to protect them from subsequent prosecution. After hearings Special Term found that no reasonable cause had been shown by appellants for their refusals to answer the questions. The decisions were properly made pursuant to section 406 after hearings that met the requirements of due process.

The orders appealed from should be affirmed.

BREITEL, J. P., RABIN, M. M. FRANK and VALENTE, JJ., concur.

Orders unanimously affirmed.