TOWN OF SMITHTOWN, Appellant, *v.* FRANK C. MOORE et al., Constituting the State Board of Equalization and Assessment of the State of New York, Respondents.

Third Department, August 15, 1961.

*Schechter & Schechter* (*Eugene L. Wishod* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Edward J. Grogan, Jr., Paxton Blair* and *George A. Radz* of counsel), for respondents.

TAYLOR, J. In 1949 the Legislature created the State Board of Equalization and Assessment as a Temporary State Commission to consist of three members appointed by the Governor (L. 1949, ch. 346.) Its existence was continued by successive enactments until April 1, 1960 on which date a permanent State Board of Equalization and Assessment was created in the office of local government in the Executive Department " to consist

of the commissioner for local government and four other members to be appointed by the governor, by and with the advice and consent of the senate." (L. 1960, ch. 335, § 1; Real Property Tax Law, § 200.) Immediately prior to the effective date of this statute, Frank C. Moore, an original appointee, T. Norman Hurd, Director of the Budget, and Joseph H. Murphy, President of the State Tax Commission, constituted the members of the temporary commission. The petition alleges and the answer admits that they constituted the permanent board when the determination complained of was made.

On June 10, 1960 the board notified petitioner that its tentative equalization rate for the year 1959 had been fixed at 34%, a reduction of 9% from that in effect for the preceding three years. It objected by written complaint to the rate as established. Thereafter a hearing was held at which petitioner sought to demonstrate the error of the tentative finding on various grounds. The board confirmed its original conclusion and announced the permanent rate accordingly.

Considering itself aggrieved, petitioner thereupon instituted this article 78 Civil Practice Act proceeding to review and annul the board's final determination. Special Term sustained respondents' objections in point of law designated (1) and (2), considered (3) as academic in view of its conclusions and dismissed the petition. From the order entered thereon, the petitioner appeals to this court.

The petitioner first assails the determination on jurisdictional grounds. The petition states its contention in this respect as follows: " The Board did not ' consist of the commissioner for local government and four other members ' (Real Property Tax Law, Sec. 200) when it made the determination whereof Petitioner is now complaining, and had no legal existence and hence no jurisdiction and no statutory or other legal authority to make said determination." It is not disputed that when the determination was made, two vacancies existed in the board and that none of its members filled the office or bore the title of Commissioner for Local Government.

The board is charged with the duty of fixing the equalization rates for approximately 1,600 units of the State government, for 30 vitally important governmental purposes. The confusion and disorder which would attend any interruption of the equalization process are not difficult to contemplate. We think it is clear that the Legislature did not intend to deprive the public of the benefits of the statutes relating to the equalization of tax assessments in any interval between the termination of the existence of the temporary commission and the bringing

of the membership of the permanent board to its full statutory complement. (L. 1960, ch. 335, § 14; *Matter of Ottinger* v. *Voorhis,* 241 N. Y. 49, 55; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185, 212.) The members of the permanent board who acted in good faith, under color of right and with the general acquiescence of State and local officials were at least *de facto* officers and their acts were valid. (*Matter of Collins,* 75 App. Div. 87, 89–90; *Matter of Pardee,* 259 App. Div. 101.) Petitioner's jurisdictional objection is without substance.

Section 1200 of the Real Property Tax Law mandates that at least once in every five years the State board shall, as part of its procedure for establishing State equalization rates, sample the ratio of assessments to market values for every major type of taxable real property in all cities, towns and villages of the State. The 1959 rate, which petitioner is challenging, was based on studies made by the board in 1952 and 1957.

In support of its claim of arbitrary action, petitioner alleges that the board established an insufficient number of sampling categories in classifying the assessment roll of the town, misclassified nine of its selected sample parcels, pursued a method of sampling which produced for appraisal 14 unrepresentative pieces of property, seven of which were private residences side-by-side in a single development, ignored two geographical areas of the town and turned up no retail store which petitioner regarded as representative of the commercial classification. The petitioner also alleges that the board placed excessive valuations on 21 of its selected parcels and that its collection of sales data to verify the appraisals was confined to but one of the four established classifications and that many of the 45 sales which it used were unrepresentative of the residential properties to which they were applied.

The rules of the board did not require the classification into categories of all types of property which the assessment roll contained. It appears that the parcels appraised in connection with the establishment of petitioner's equalization rate were selected from types of property which constituted 85% of the roll as classified by the local assessing authority. The sampling of classes representing a minimum of 80% of the total assessment roll met its procedural requirement. The board denies that the nine parcels claimed by petitioner to have been misclassified were not appropriately typed on the pertinent 1956 assessment roll of the town and asserts that all sample parcels used were appraised at their market value in accordance with the conditions and circumstances in which the board appraisers found them despite any error in indicating the character of

the property which may have been made by the assessors in their compilation of the assessment roll. The parcels to be sampled were selected random-wise by means of a table of random numbers evolved by the board and designed scientifically to produce a representative sample of a given class of property and to correct errors of classification by the local assessor. It appears from the affidavit of the director of equalization in the board that the appraisals of the seven residences alongside each other were no part of the data which was related to the equalization rate of petitioner but that such were considered only in connection with the determination of the rate for the Village of The Branch. The affidavit further states that the board's staff makes annually more than 17,000 appraisals which conform to recognized evaluating principles and techniques. The board denies that the sample parcels were appraised excessively. To verify the appraisals, it considered all bona fide sales between April 1, 1956 and September 30, 1957 which were communicated to it by the County Clerk and local assessor as required by its reporting procedure provided they represented classes of property under sampling and that there were at least five sales in each applicable class. The sales data of the reported 45 parcels employed by the board involved transfers of residential property not suitable under its procedures for use in the three other established classifications.

In the vast public enterprise of equalizing local tax assessments in each municipality of the State, the Legislature has vested the board with wide discretion in the performance of the task. (Real Property Tax Law, § 1202.) The standards and procedures formulated to execute its duties are applied uniformly and universally to all units of the State government. A difference of viewpoint as to their suitability for the purposes for which they were designed is the principal basis of petitioner's claims. '' We cannot say that such a process is inadequate for practical attainment of the rough equality which is all that has heretofore been possible under any system of taxation.'' (*People ex rel. Hagy* v. *Lewis,* 280 N. Y. 184, 188.) Nor are evaluative disagreements between local authorities and the body charged with the equalization responsibility in the inexact field of real estate appraisement sufficient to invite judicial intervention. (*Matter of Town of West Turin* v. *Moore,* 10 Misc 2d 683 and *cases cited therein.*) A private study conducted by an appraiser employed by petitioner which produced a rate result at variance with that of the board does not demonstrate in itself either error or arbitrariness on its part.

It appears that at the conclusion of the appraisal assignment in 1958, the Town Supervisor and Town Assessors "were furnished a list of properties appraised and the valuations found, at least three weeks prior to a meeting with the local officials called for the purpose of discussing the appraised values and the representativeness of the appraisal samples." At the meeting subsequently held the town's representatives found no fault with either.

After petitioner had registered its objections to the accuracy of the tentative rate and following the hearing before the board thereon, its three executive officers reconsidered the complaint of the town and submitted to the board a memorandum which read:

" To test the effect of the complaint that certain appraised values were too high and that a large commercial class should have been included, the staff recomputed the rate for the town, incorporating both of these objections. On all appraisals where there was disagreement, the staff used the values submitted by the town for the large commercial class. Three shopping center appraisals, prepared by our staff for village rate purposes, which the town suggested as typical, were used to establish the ratio for the class.

" The recomputation of these changes did not change the rate for the town.

" To determine if the sample for commercial properties assessed $30,000 or under was representative, two additional random samples were made. Both of these additional samples were rejected by the town as not representative. It is the staff's conclusion that no sample of commercial properties in this class which will be satisfactory to the town can be selected by our random method, because large numbers of properties classified by the assessors as commercial, do not in fact conform to this classification. We believe that our sample of this class is representative of the properties classified as commercial on the town assessment roll.

" To determine if samples were well distributed geographically, all samples were plotted on a map of the town. (The town, which had done this previously, was found to have omitted certain samples and to have included numerous other village samples which were not used in the town rate.) The geographic distribution of sampled parcels was found to be reasonable.

" Our study of the data and of the claims of the town did not result in any change in the tentative rate of 34."

The determination of the board had warrant in the record, a reasonable basis in the law and was neither arbitrary nor capricious. Special Term properly dismissed the petition. (*Matter of Radigan v. O'Connell*, 304 N. Y. 396, 399; *Matter of Park East Land Corp. v. Finkelstein*, 299 N. Y. 70, 75; *Matter of Mounting & Finishing Co. v. McGoldrick*, 294 N. Y. 104, 108; *Matter of Gamewell Co. v. Public Serv. Comm.*, 8 A D 2d 232, motion for leave to appeal denied 7 N Y 2d 706.)

Finally, the board's refusal to consider the evidence of petitioner purposed to illustrate error in the equalization rate for the Town of Huntington, located within the same school district, absent an application for a special equalization rate provided by section 1314 of the Real Property Tax Law, was not arbitrary. Simple justice would require that the town concerning whose rate the petitioner sought re-evaluation should have notice and an opportunity to be heard.

The order should be affirmed, with $50 costs.

BERGAN, P. J., GIBSON and HERLIHY, JJ., concur.

Order affirmed, with $50 costs.