OPINION OF THE COURT
Herman Cahn, J.
The court is here presented with an extremely troubling situation which has great possible repercussions for the criminal justice system. The problem involves the refusal of a witness to be sworn or give testimony, upon the claim that he fears that harm will come to him or his family as a result.
The facts are as follows: On May 2, 1984, in Part 48, following the swearing of the jury and calling of witnesses in the within action, the People called their chief witness Rafel Coste. He began to enter the courtroom but recoiled upon seeing defendant in the courtroom sitting at counsel table. Coste explained to the Assistant District Attorney *565 that he would not testify because he believed that if he did, harm would come to him or to his family. He also said that he had been told by a police officer that he would never have to testify in the presence of defendant. Coste had previously testified before the Grand Jury, which testimony was of course given in the absence of defendant.
The court offered to appoint counsel for the recalcitrant witness, but he advised that he would retain his own counsel. He did so, and at the court’s direction, returned with his attorney the following day.
At that time, the witness was again called (outside defendant’s presence) to testify. He refused to take the oath, stating that his life and the lives of his family would be endangered if he gave testimony. The court directed him to testify and explained that failure to do so could result in a contempt of court finding, with punishment. Stating that he understood the court’s direction and the possibility of contempt, Coste refused to be sworn, asserting fear as his explanation.
The District Attorney’s office offered police protection to the witness. He accepted it for one night, but thereafter indicated that he would prefer to have it withdrawn, which it was. In addition, the District Attorney’s office offered to provide assistance for the witness to relocate himself and his family. The prosecution offered this help in the context of a newly formed witness relocation program, evidently patterned on a similar Federal program. The witness refused such assistance. He stated that he was aware of the offers of protection but that he and his family had established their lives in New York and that he wasn’t willing to uproot and start over elsewhere.
A contempt hearing was begun on Friday, May 4, 1984, and completed on Monday, May 7, 1984. Coste testified that defendant and his brothers had a reputation in Santo Domingo (where both Coste and defendant had previously resided) and in Manhattan (where they currently reside) as drug dealers and killers and that he had been told by an unnamed person sometime after the murder occurred that defendant was out to kill him. Coste stated that the only reason he had testified at the Grand Jury was because of assurances made to him by one Detective Suarez of the *566 New York City Police Department that he would never have to testify in front of defendant and that he needn’t worry about his safety. The witness did not testify as to any specific threats or overt threatening actions made to him or to any other member of his family.
The testimony of the other witnesses related to the means by which Coste’s court appearances were procured and to transactions between his counsel and the District Attorney’s office.
The court notes that the murder of which defendant is accused took place more than two years ago. During all this time, defendant has been free on bail and residing in the same general community as the witness.
The witness did not testify as to any specific threats made to him or his family by anyone.
Subdivision A of section 750 of the Judiciary Law empowers the court to punish for criminal contempt a person guilty of “5. Contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory.”
The law is well settled that the People are entitled to every witness’ testimony. “[EJvery person owes a duty to the State to testify and may be compelled to do so”. (People v Clinton, 42 AD2d 815, 816.) Fear for himself or his family is not, as such, a valid excuse to justify a refusal to testify. (People v Clinton, supra; Piemonte v United States, 367 US 556, 559, n 2.)
Coste contends that his refusal is not contumacious and unlawful, but rather is excusable under the legal defenses of justification and/or duress. Justification as a defense to a finding of contempt is not well established under New York case law but there are indications that the trend is toward acceptance of the defense under proper circumstances. The essence of the defense is that, although a wrongful act was committed (here, refusal to take the oath), the actor had no reasonable choice but to commit that act. (Penal Law, § 35.05.) The cited section relates to a defense in a case where one is charged with a violation of the Penal Law, rather than acting contumaciously under the Judiciary Law, as here. Nevertheless, the theory embodied in the section, that there are at times justifiable *567 reasons for a failure to comply with the law, is one which the court will carefully consider in deciding whether to find the witness in contempt and, if so, in setting the punishment to be imposed.
In People v Clinton (supra), the Appellate Division, Third Department, when faced with a similar argument, affirmed the trial court’s holding that, as a matter of law, fear for one’s life or the life of one’s child was not a reason for refusing to testify and would not be a defense to a charge of contempt. This holding was based on the important and well-established principle that every person owes a duty to the State to testify and may be compelled to do so (Matter of Commission of Investigation v Lombardozzi, 7 AD2d 48). The obligation to testify is essential to effectuate the State’s ability to control, punish and reduce crime and every person owes the State that duty. (Matter of Commission of Investigation v Lombardozzi, supra, pp 56-57.) Its importance is such that the Legislature has seen fit to make failure to adhere to it a criminal act (Penal Law, § 215.50, subd 4), as well as a basis for finding the witness in criminal contempt. Several New York courts have indicated that the defense of justification may be a valid defense to a charge of criminal contempt, and, therefore, the defense will be considered here. (See Fuhrer v Hynes, 72 AD2d 813; People v Lennon, 115 Misc 2d 738.)
The justification defense is codified in article 35 of the Penal Law. Section 35.05 states that
“conduct which would otherwise constitute an offense is justifiable and not criminal when * * *
“2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.” “[T]he impending injury * * * must clearly outweigh the injury sought to be prevented by statute”. (Fuhrer v Hynes, supra, at p 813.) *568 Since the alleged impending injury in Fuhrer v Hynes (supra), loss of the witness’ ministry was hot nearly as severe as the alleged impending injury here, loss of life, that case is not dispositive here. However, even in view of the severity of the alleged impending injury, the justification defense must be rejected here as well.
A review of Federal cases involving similar situations is instructive. Although most Federal cases refused the justification defense as a matter of law,* based upon dicta in the Supreme Court’s decision in Piemonte v United States (supra) and in no reported case has the defense successfully been asserted, one circuit, the Seventh, has clearly indicated the availability of the defense. (The Intimidated Witness, 50 Fordham L Rev 582, 595; United States v Patrick, 542 F2d 381.) In United States v Patrick (supra), Patrick, like Coste, refused to testify at trial although he had testified before a Grand Jury. There was testimony that the defendant in a gambling prosecution, O’Hara, had threatened Patrick and that O’Hara had a reputation as a killer. The court found Patrick to be sincere in his belief that testifying might endanger his life. The court held, however, that fear itself would not justify refusal to testify and that Patrick had to satisfy all elements of the defense. Patrick failed to satisfy the element of immediacy as there was no evidence that injury was present, immediate or impending, in light of O’Hara’s failure to carry out his threats over 18 months (supra, at p 388). The court also stated that Patrick had failed to take reasonable steps to extricate himself from the apparent danger in that he failed to take any measures to protect himself or his family (supra, at p 388). At the time he refused to testify, he had made no attempt to inform the court as to his fears, their basis, and steps he had taken to avoid danger and comply with the law (supra, at p 388).
Coste’s situation, although somewhat similar, is significantly different. Coste is an innocent witness and, unlike Patrick, has not placed himself in the situation through any criminal activity of his own. On the other hand, Coste *569 has not complained of being actually threatened in any way by the defendant or his associates and has resided in the same neighborhood as defendant for approximately two years, while defendant has been out on bail. Coste has explained his reasons and basis for his fear but has refused protection.
In the instant case, Coste has not sufficiently established a defense of justification, and has shown no valid grounds for refusing to take the oath. Hence, it cannot be said that failing to testify was “necessary as an emergency measure to avoid an imminent * * * injury”. (Penal Law, § 35.05, subd 2.) Moreover, the recalcitrant witness has refused the protection offered by the District Attorney’s office. Because acceptance of protection was an alternative available to Coste, it is simply not true that refusal to testify was “necessary” to avoid the injury.
In rejecting the justification defense here, the court notes its awareness that the protection offered to and refused by Coste is, of course, itself not a pleasant alternative for him. The court sympathizes with Coste and his reluctance to embark on a new life in a new place, especially in view of the fact that, other than his refusal to testify, Coste is free of any wrongdoing and has been brought into this arena as an innocent bystander. To disengage oneself from a life that he has established and enjoys, for reasons over which he has no control and have not been caused by any impropriety of his own is a burden of great magnitude. Nevertheless, on the facts of this case, and in light of the needs of the State for the testimony of witnesses to crimes in this and future cases, Coste’s refusal to take the oath is not legally justified.
Coste also raises the affirmative defense of duress under section 40.00 of the Penal Law. It is applicable when one engages in proscribed conduct because “he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist” (Penal Law, § 40.00, subd 1). As discussed above, there have been no threats here nor has any force been used. Coste has failed as a matter of law then, to establish duress, especially in *570 view of the fact that the burden of proof is placed upon the person asserting this affirmative defense (Penal Law, § 25.00, subd 2).
Coste offers two additional reasons why he ought not be found in contempt of court. It is averred that in order to induce Coste to disclose what he knew about the incident, Detective Leo Suarez of the New York City Police Department promised him that his testimony would be kept secret, and he would not have to testify again. Coste claims to have relied upon that promise in giving information to the police. Having fulfilled his part of the alleged promise, Coste seeks to have the State fulfill its part.
At the hearing, Detective Leo Suarez did not testify, as the attorneys were unable to locate him. Coste’s uncontested testimony at the hearing does not clearly establish that a promise was made. At no time did he actually testify he had been promised anything. As for what he was allegedly told by Suarez, it appears likely that there was some misunderstanding and that no promise per se was made.
Even if Suarez did make promises to Coste, which the court does not believe to be true, such promises would not lead to impunity for Coste’s refusal to take the oath or testify. Leaving aside any questions of Suarez’ authority or apparent authority to make such a representation in behalf of the People; the alleged promise would not be binding. All citizens are obligated by law to provide information to law enforcement authorities and to testify before a Grand Jury when subpoenaed. Therefore, Coste gave nothing in exchange for the alleged promise which he would not have been obligated to give absent the promise. He may, in fact, have relied but not to his detriment.
This situation is not like a plea bargain between prosecution and defense in which significant rights are relinquished in reliance upon the prosecutor’s promise. (See People v Carter, 73 Misc 2d 1040, 1042; Santobello v New York, 404 US 257.) Coste has not been prejudiced; he has not lost any rights to which he would otherwise be entitled, nor has he taken any action which he would not otherwise have been obligated to if not for the alleged promise. (People v Carter, supra, at p 1042; see, also, Government of Virgin Islands v Scotland, 614 F2d 360; cf. Cooper v United *571 States, 594 F2d 12.) Therefore, he may not hold the People to the alleged promise, even were he to prove the existence of the promise.
Finally, Coste contends that the court is without jurisdiction over him, to exercise its contempt power. Coste never received a subpoena to attend the May 2,1984 court session. Coste testified that on May 2,1984, he was notified by phone that he should come down to the 26th Precinct to discuss the incident. He came to the precinct and then was driven by a police officer to the office of Assistant District Attorney Hamilton. They later accompanied him to the courthouse and courtroom. Coste stated that he didn’t realize he wasn’t told the reason why he was to appear in court. This testimony was not contradicted by Assistant District Attorney Hamilton but she stated that although she may never have specifically told Coste that he would be going to court to testify, it seemed apparent to her that under the circumstances Coste understood the purpose of their conversations and the court appearance.
The court finds that Coste’s appearance in court was voluntary and not the result of coercion on the part of the police or District Attorney’s office. The police accompaniment and the rides provided served as an accommodation to Coste and did not in purpose or effect coerce his attendance. The Assistant District Attorney’s conduct did not amount to subterfuge or coercion in procuring Coste’s presence. The law is well settled that appearance before the court is all that is required to confer jurisdiction over the person. (People ex rel. Barnes v Court of Sessions, 147 NY 290, 295.) The contempt in this case occurred within the hearing and sight of the court, after the witness made his appearance. Neither the order to show cause nor the notice of motion provisions are implicated. (Judiciary Law, § 751, subd 1.) Consequently, the cases cited by Coste are inapposite.
Coste’s subsequent appearances were properly secured by a material witness order.
The court has found the witness Coste in contempt for refusal to be sworn or offer testimony despite having been directed to do so by the court and being warned that he could be held in contempt. (Judiciary Law, § 750, subd A, *572 par 5.) The court, well aware of the dilemma with which Coste is faced, makes the decision with great reluctance. However, in view of the obligation of all persons to disclose information which they have with respect to a crime and the importance of that obligation to the effective administration of the criminal justice system, the court is compelled to find Coste in contempt. Because of the mitigating factors, the court does not impose the maximum 30-day jail sentence, but, rather, one of 12 days’ imprisonment. (See United States v Gomez, 553 F2d 958; Harris v United States, 382 US 162.) The contemnor may purge himself at any time, by agreeing to take the oath.

 In the Federal cases, “duress” is the defense asserted but the elements are very similar to those of the State’s “justification” defense. Coste also raises the State’s “duress” defense under section 40.00 of the Penal Law. This affirmative defense will be discussed later in this decision.