(June 13, 1985)

■ The People of the State of New York, Respondent, v Kevin Townsend, Appellant. — Judgment of the Supreme Court, Bronx County (D. Levy, J.), rendered February 18, 1983,

convicting defendant, after trial by jury, of murder in the second degree, and sentencing him to a term of imprisonment of 20 years to life, is reversed, on the law and facts, and the matter remanded for a new trial.

Judicial innovation in the interests of simplifying the task of the jury and helping it in its deliberations is to be applauded. In this case, however, the trial court's premature and unbalanced written charge on the law, in the preliminary instructions, covering both substantive law as well as procedures, denied defendant due process.

There is no need to recapitulate the testimony and evidence presented at the trial. The critical issues for the jury's determination were the credibility of witnesses and the voluntariness of statements allegedly made by defendant and his codefendant, Bernard Graves.

Over the objection of *both* attorneys for the defense, as well as the prosecutor, the trial court provided each juror with a written copy of its preliminary charge on the elements of intentional murder, felony murder and first degree robbery, and the non-shooter affirmative defense to felony murder, to refer to during trial.

As noted, this case turned on the credibility of witnesses and the voluntariness of statements. Yet, in its preliminary charge the court neglected to include instructions on the presumption of innocence, reasonable doubt, voluntariness of statements and the manner in which to assess credibility. Thus, the jurors may have been encouraged to begin deliberations before the completion of the trial and to evaluate the evidence solely on the basis of the written outline given them, in spite of the complete absence of those instructions critical to a fair verdict.

Pursuant to CPL 260.30, which sets forth the order in which a jury trial proceeds, subdivision (2) reads: "The court must deliver *preliminary* instructions to the jury" (emphasis added). After the evidence and summations, "10. The court must then deliver a charge to the jury." The charge is followed only by the jury deliberations and "if possible * * * a verdict." (CPL 260.30 [11].) The dissent finds it a "relatively safe proposition" and "appropriate" for the court to instruct the jurors with regard to the elements of the crimes charged at the beginning of the trial. However, CPL 270.40, which deals with preliminary instructions, mandates that the trial court "instruct the jury *generally* concerning its basic functions, duties and conduct" (emphasis added). Chief Administrative Judge Bellacosa, in his commentary on this section, notes that "the kind and depth of instructions which must be given [are] quite general and preliminary"

(Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 270.40, p 502; *see also, People v Newman,* 46 NY2d 126, 129-131). The dissent further notes that "accurate instructions as to the elements of the charged crimes are wholly neutral and have no * * * built-in prosecutorial bias." However, *even* the prosecutor objected to the court's submission, noting: "You see I'm just afraid, Judge, that by giving this to the jury even though Your Honor will no doubt in my mind charge it in every — in every facet of the law, by giving these written instructions to them they may — *they may feel that the Court is emphasizing something*" (emphasis added).

The in-depth, yet incomplete, written charge furnished to the jury before the presentation of evidence encouraged premature deliberations. The duty of the jury not to consider the case before it is submitted "is an important one. It appears to derive not only from the statutory admonition, the salutary purposes of which are obvious, but also may, perhaps, be rooted in defendant's right under our State Constitution to have his guilt or innocence determined by a jury of 12 persons, all of whose deliberations are to be carried on as one body of 12. (See *People v Ryan,* 19 NY2d 100, 104-105.) Moreover, when that duty is breached before defendant's summation, as may have occurred here, the possibility exists that some or all of the jurors will have formed conclusions about the case without their having been exposed to defendant's summation, 'a basic element of the adversary fact-finding process in a criminal trial.' (*Herring v New York,* 422 US 853, 858.)" (*People v Gordon,* 77 AD2d 662, 664.)

The dissent states that the finding that the incomplete written instructions furnished the jury violated defendant's right to a fair trial is not "clearly explained." Simply and clearly put, the trial court's innovation of providing the jurors during the preliminary instructions with a written outline of the elements of three of the crimes for which defendant and the codefendant were indicted, and the elements of a possible affirmative defense, invited the jurors to deliberate *as the evidence unfolded* rather than at its conclusion. This written charge was rendered even more prejudicial since neither it nor the oral preliminary instructions contained any of the instructions beneficial to the defendants, and of paramount importance in reaching a fair verdict, such as presumption of innocence and reasonable doubt. The written instructions given to the jury included the phrase "the People must prove beyond a reasonable doubt" a number of times but it was used *solely* in conjunction with the elements of the various crimes charged. Without a definition, the use of the phrase in such a context is little more than a meaningless

incantation. Thus, the jury was encouraged to make a preliminary decision that an element of a crime was satisfied *without* the countervailing instruction that any decision should be subjected to the proper constitutional standard of proof beyond a reasonable doubt.

Indeed, in its final charge, the court instructed the jury to acquit if it did not find any of the statements of a defendant to be voluntary and truthful since it "determined that the remaining evidence is insufficient as a matter of law to establish the guilt of that defendant beyond a reasonable doubt." This clearly demonstrates the prejudice to defendant as a result of the preliminary instruction for the jury to evaluate the evidence in the context of the elements of the charged crimes without *equally prominent* instructions on the voluntariness of statements and the credibility of witnesses.

Finally, before the testimony began, the court already had charged the jury on the elements of intentional murder, felony murder, first degree robbery and the affirmative defense to felony murder. However, after the evidence was in, it submitted only the felony murder count, nor did it submit the affirmative defense. As a consequence, it might well have conveyed the message, although unintentionally, that defendant had no viable defense, and that of the three crimes submitted to them, felony murder was the one of which defendant was guilty.

The dissent notes that "it is an invariable part of the jury selection process that the trial court instructs the jury as to the fundamental principles governing such trials". The record, of course, is silent as to how often, or if at all, the jury was informed during voir dire that defendant was presumed innocent and of his other rights. Even assuming, as does the dissent, that defense counsel did so repetitively, the fact remains that the voir dire is *not* the appointed place for jury instruction by the trial court nor are counsel designated as the proper conduits of the law to the jury. It is not the prerogative of the lawyers, however able, articulate or effective, to instruct the prospective jurors or jurors as to the law during the voir dire, or the openings, during the course of the trial, or even in the summations. That authority resides only in the Judge presiding.

The evil of the preliminary written instructions in this case was not so much that they were written, but rather that the jury throughout the trial had been unduly influenced by a misleading charge which was rendered more influential precisely because they were written and constantly available for reference.

The effort by the able and conscientious Judge at Criminal Term, which, as he himself noted, was "an experiment" to

simplify matters for the jurors by providing them with a written charge during the preliminary instructions, deprived defendant, under the circumstances herein, of his right to a fair trial under both US Constitution 14th Amendment and NY Constitution, article I, § 6. "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right" (*People v Crimmins,* 36 NY2d 230, 238). Concur — Asch, Fein and Milonas, JJ.

Murphy, P. J., and Sandler, J., dissent in a memorandum by Sandler, J., as follows: The defendant was convicted, after a jury trial, of murder in the second degree on the basis of overwhelming evidence that leaves no room for doubt that he was a knowing participant in a robbery during which a cab driver was killed, and very little doubt that he was in fact the killer. The evidence included statements by the defendant to friends on separate occasions in which he said that he had participated in the holdup and had fired the fatal shot, a signed statement by the defendant to a police officer admitting his participation in the robbery but attributing the shooting to another participant, and a videotaped confession to the same effect to an Assistant District Attorney.

The single issue on this appeal is raised by the defendant's contention that he was deprived of a fair trial because the trial court gave to the jury at the beginning of the trial written instructions embodying the elements of the principal crimes charged to him — common-law murder, felony murder, and robbery in the first degree — and of the elements of the affirmative defense that had been interposed by the defendant to the charge of felony murder, the written instructions concerning the charged crimes introduced by the explicit direction that "the People must prove beyond a reasonable doubt" the required elements of the crimes. Although reasonable people may differ as to the wisdom of this technique, and I myself have reservations as to its desirability on balance, I perceive no basis for the conclusion that what occurred in any way violated, or came close to violating, the defendant's constitutional right to a fair trial.

I start with what seems to me the relatively safe proposition that it is appropriate for a trial judge in a criminal case, although not mandated or customary, to instruct the jurors at the beginning of the trial with regard to the elements of the crimes concerning which they are to hear and evaluate the evidence. The defendant did not object to the trial court giving such instructions in oral form to the jury at the beginning of the case, and indeed explicitly requested the court to instruct the jury with regard to the elements of the affirmative defense that

had been interposed. If it is appropriate to so instruct the jury at the beginning of the trial in order that the jury may be better able to understand and follow the evidence, it is mystifying how a defendant's right to a fair trial is violated when those elements are made available in written form to the jurors so that they may refresh their recollection with regard to them during the course of the trial.

In part the court's opinion appears to be influenced by the curious notion that instructions with regard to elements of charged crimes, and the affirmative defense to one of them, have some kind of built-in prosecutorial bias which requires "balancing" by other instructions that are deemed more favorable to the defendant. But I think it clear that accurate instructions as to the elements of the charged crimes are wholly neutral and have no such built-in prosecutorial bias. If the evidence satisfactorily establishes the defendant's guilt of the crimes, a clear understanding by the jury of those elements will of course be helpful to the prosecutor. If the evidence fails to establish satisfactorily the defendant's guilt of a required element of the crime, a clear understanding of those elements by the jury will be helpful to the defendant. I should not have thought that jury confusion during the trial as to the elements of the charged crimes was a desirable thing or that a precise and accurate jury understanding of those elements was inherently favorable to the prosecutor. To the extent that any "balancing" may appear to have been required, it was surely adequately accomplished when the written instructions opened with the explicit reminder that "the People must prove beyond a reasonable doubt" the specified elements of the crime.

In concluding that the defendant was here deprived of a fair trial, the court's opinion argues that the effect of providing the jurors with the written instructions was to induce them to deliberate prematurely, accept uncritically whatever evidence was presented, and determine guilt without regard to the prosecutor's duty to establish guilt beyond a reasonable doubt. Reversal clearly would be mandated if there were any realistic basis for supposing that the written instructions in fact induced so fundamental a jury departure from the appropriate discharge of its sworn duties, or that it had a significant possibility of doing so. But is there any basis in reason or experience for supposing that the furnishing of written instructions had or was reasonably likely to produce such a result? I think not.

As I understand the court's opinion, except for the written instructions, the jury would have discharged its duties appropriately and in accordance with its sworn obligations. Except for

the written instructions, the jury would have evaluated the testimony critically, would have withheld judgment until they retired for deliberation, and would have at all times evaluated the evidence in accordance with the People's obligation to establish guilt beyond a reasonable doubt. Somehow, in a manner not clearly explained, the receipt by the jurors of the written instructions, although an accurate statement of the elements of the charged crimes and preceded by a reminder as to the People's burden of proof, brought about a dramatic change. A vivid picture is presented of jurors studying the written instructions, and as a result of that study uncritically accepting as conclusive whatever evidence was offered by the People, ignoring the repeated instructions to keep an open mind until the end of the case, and wholly disregarding the People's burden to establish guilt beyond a reasonable doubt. With all due respect to the court, the picture presented in the court's opinion seems to me fanciful, based upon the most dubious and speculative psychological assumptions, and contrary to any realistic assessment of what occurred.

Let us try to apply the thesis set forth in the court's opinion to one of the specific pieces of damaging evidence introduced at the trial — the testimony of a friend of defendant and the codefendant that they spoke to him several hours after the homicide, and in the course of the conversation the other participant stated that they had just robbed a cab and that the defendant had shot the driver, and the defendant explained that he shot the driver because he thought he had a gun, simultaneously showing the witness two guns, a .32 caliber handgun and a .38 caliber handgun.

Assuming that the trial court had not furnished written instructions to the jurors and had not in any way instructed them as to the elements of the crime, it is surely free from doubt that the jurors would have known from the District Attorney's opening statement and that which was undoubtedly said at the voir dire that the defendant and his codefendant were charged with participating in a robbery in which a person was shot to death, and that the defendant was charged with having fired the fatal shot. According to the court's analysis, this understanding by the jury would not have led them to deliberate prematurely, notwithstanding the fact that the testimony of the witness, if believed, established the defendant's guilt of the crimes charged. Somehow, we are told, the jurors were induced to depart from their sworn obligations because they were in possession of two pieces of paper informing them, as here pertinent, of the following:

"In order for you to find either or both defendants guilty of murder in the second degree the People must prove beyond a reasonable doubt each of the following three elements: One, on or about and between February 28, 1982, and March 1, 1982, in Bronx County, the defendants acting in concert shot Juan Rivera with a pistol; two, when the defendants acting in concert shot Juan Rivera they intended to cause his death * * *

"In order for you to find either or both defendants guilty of felony murder and robbery in the first degree in this particular case, the elements of felony murder and robbery in the first degree being identical, the People must prove beyond a reasonable doubt each of the following six elements.

"One, on or about and between February 28, 1982, and March 1, 1982, in Bronx County, the defendants acting in concert took money from Juan Rivera; two, the defendants acting in concert took the money with the conscious aim of keeping it for themselves; three, in the course of taking the money from Juan Rivera the defendants in acting in concert threatened Juan Rivera with a pistol; four, after taking the money from Juan Rivera and before leaving the scene the defendants acting in concert shot Juan Rivera with a pistol. It does not matter whether the shooting was intentional or unintentional. If you find the defendants were acting in concert in committing the robbery, it does not matter which of the two defendants did the shooting. Five, the shooting caused the death of Juan Rivera; and, six, Juan Rivera was not a participant in the robbery."

Is it really sensible to suppose that the possession of these instructions caused the jury to deliberate prematurely in evaluating the summarized testimony, whereas they would not have done so simply on the knowledge that the defendants were charged with participation in a robbery in which a person was killed and that the defendant was alleged to have done the actual shooting? Is that inference so clear as to justify the conclusion that the defendant was deprived of his constitutional right to a fair trial?

The court's opinion seems to me singularly unfair in its treatment of the trial court's exemplary preliminary instructions. As here pertinent, the trial court instructed the jury that the defendants had no obligation to open since they had no obligation to prove anything and that it was the duty of the jury to evaluate the credibility of the witnesses (giving appropriate and sound amplifying details as to how that obligation was to be discharged), directed the jury to keep an open mind until they retired to deliberate after the completion of the trial, reminded the jury on several occasions that it was the People's duty to

establish guilt of the defendants beyond a reasonable doubt on every element of the crimes charged, and fairly described the contrasting nature of the defendant's obligation with regard to the affirmative defense. Addressing explicitly one of the concerns expressed in the court's opinion, the trial court said: "[L]et me emphasize that giving you this is an aid primarily to you in listening to the testimony and finding out where it fits if this is what you hear. It's not meant to emphasize this over any instructions I give you. I feel that this is the most complicated part of my instructions, the most difficult for you to follow, and therefore I am going to give it to you in writing."

I am unable to understand why this court has concluded that in this case, in distinction to the usual situation, the jury disregarded the instructions given simply because they were in possession of written instructions intended to permit them to refresh their recollection as to the elements of the charged crimes and the affirmative defense.

As to the trial court's alleged neglect to include an instruction as to the voluntariness of the statements, an issue realistically without merit in this case, the record discloses no request by defense counsel for the court to so instruct the jury. I am aware of no authority prior to this decision in which the failure to do so in preliminary instructions, in the absence of any request by counsel, was deemed an error.

As to the trial court's failure to give detailed instructions with regard to reasonable doubt of the kind customarily given in the final charge; and rarely, if ever, given in preliminary instructions, it seems to me evident that what was said was more than adequate to alert the jury to the essential point that the People bore a heavy burden of proof. I myself have never been persuaded that the complete reasonable doubt charge in several of the established formulations is more helpful on balance to defendants than the simple direction that the People must establish guilt beyond a reasonable doubt. Indeed, I believe the contrary is often true. In any event, the inclusion in the written instructions of the People's obligation to prove guilt beyond a reasonable doubt was at a minimum a sufficient protection to defendant to preclude any serious claim of constitutional violation.

It is true that the preliminary instructions did not remind the jury that the defendant was presumed innocent, and it is also true that defense counsel did not request inclusion of that instruction. The undoubted reason for its omission and the failure to request is that it is an invariable part of the jury selection process that the trial court instructs the jury as to the

fundamental principles governing such trials including presumption of innocence, reasonable doubt, and the duty of jurors to keep an open mind throughout the trial, that the trial court questions jurors as to their ability to accept these principles, and that defense counsel questions the jury repetitively as to their acceptance of these principles. To suppose that the jury was not fully informed on these matters, and most particularly not informed on the presumption of innocence and the People's burden of proof, in this case, a murder case, in which two defendants were represented by exceptionally able, articulate and effective lawyers, is to assume a unique event in the recent history of criminal trials in this city.

Nor is there any reason for concern in the circumstance that in the court's final charge it did not submit to the jury common-law murder, robbery in the first degree, and the affirmative defense to felony murder. The reasons the trial court gave for not ultimately submitting these matters, and his statement to the jury with reference to his not submitting them, should be noted. The trial court did not submit the robbery count because he found no corroboration. He did not submit common-law murder because the evidence indicated that the appellant, and not his codefendant, was the actual killer, and the court thought it inappropriate to submit that charge as to one defendant and not the other. Finally, the trial court did not submit the affirmative defense to felony murder because no evidence was proffered supporting in any way at least one of the elements of that affirmative defense, a ruling not challenged on this appeal.

In his charge to the jury with regard to not submitting the affirmative defense and two of the charged crimes which had been the subject of written instructions, the court said: "I am also not submitting as you may have heard the affirmative defense in this case to felony murder, and that is a decision I made as the Court, and you are not to speculate as to why I haven't submitted it. It's not to have any bearing on the outcome of this case nor is the fact that I haven't submitted any of the other charges to have any bearing on the outcome of your deliberations. And please don't speculate as to that either."

It is of course clear that the defendant was helped, not hurt, by the court's decision not to submit the common-law murder and robbery charges. As to the failure to submit the affirmative defense to felony murder, I see no realistic basis in this record for the conclusion that this defendant was unfairly prejudiced by the failure to submit an affirmative defense that had been the subject of written instructions to the jury. Certainly, I see no basis to conclude that what occurred deprived the defendant of his constitutional right to a fair trial.

Preliminarily it will be recalled that defense counsel requested the court to instruct the jury with regard to the elements of the affirmative defense in his preliminary instructions. Unless we are to assume that the jury would necessarily have forgotten that instruction, the situation presented by the failure to submit that defense is not essentially different because its elements were embodied in a written instruction to the jury. Moreover, with commendable caution the trial court had informed the jury that the defense was one that might be presented during the trial, not that it was one that would in fact be presented. Finally, I see no reason to assume that the jury disregarded the court's explicit instructions not to speculate on his reasons, or that the jury in fact speculated in a way that could conceivably have affected the outcome of the trial.

The defendant was convicted of murder in the second degree on the basis of overwhelming evidence establishing his guilt in a trial remarkably free from error, and presided over by a Trial Judge whose zealous concern to protect the rights of the defendants was conspicuously manifested throughout the trial.

Accordingly, the judgment of the Supreme Court, Bronx County (David Levy, J., at suppression hearing, at jury trial and sentence), rendered February 18, 1983, convicting defendant, after a jury trial, of murder in the second degree and sentencing him to a term of imprisonment of 20 years to life, should be affirmed.