■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER COMPTON, Appellant.—Judgment, Supreme

Court, New York County (David Levy, J., at trial and sentence), rendered August 19, 1983, convicting defendant, following a jury trial, of criminal sale of a controlled substance in the third degree and sentencing him to an indeterminate term of 4½ to 9 years, reversed, on the law and the case, and remanded for a new trial.

Defendant was arrested on December 11, 1981 for his alleged participation in a heroin sale to an undercover officer which occurred five weeks earlier, on November 3, 1981. Prior to commencement of the trial, the court gave its preliminary instructions relating to the jury's "basic functions, duties and conduct." (CPL 270.40.) In addition to its oral instructions, the court also distributed written instructions to the jury relating to: (1) the specific elements of the crime of criminal sale of a controlled substance in the third degree, (2) acting in concert, and (3) proving identity. The jury was told that "this will give you enough background information so that you will have some idea of what to look for and what to listen to during the trial." Each juror was given six typewritten pages, containing that portion of the preliminary instruction, "to look at, to read over, to keep with you during the course of the trial." The Assistant District Attorney objected to the procedure and defense counsel, while he had no similar exception, did object to the jury being permitted to take the written preliminary instructions into the jury room during deliberations.

At the close of the two-day trial, the court informed counsel that it would submit to the jury written instructions dealing with the same issues previously given to them. The court directed the clerk to collect the written preliminary instructions from those jurors who had them but the record does not disclose whether all copies were retrieved. Over defense counsel's objection, each juror was then given four typewritten pages, covering the same selected portions of the charge, but without reference to any of the basic legal principles favorable to the defense, namely, presumption of innocence, burden of proof, definition of reasonable doubt or the critical issue of credibility.

In *People v Townsend* (111 AD2d 636, 638, *affd* 67 NY2d 815), we found, under the facts of that case, that this practice of submitting selected written portions of the court's preliminary instructions improperly encouraged premature deliberations, inviting the jurors "to deliberate *as the evidence unfolded* rather than at its conclusion." (Emphasis in original.) It was also found that the preliminary instructions were unbalanced since the court did not include legal principles

beneficial to the defense—presumption of innocence, reasonable doubt, voluntariness of statements and instructions as to assessing credibility. Under the circumstances, we held the practice in that case deprived defendant of his right to a fair trial under US Constitution 14th Amendment and NY Constitution, article I, § 6: "[T]he jurors may have been encouraged to begin deliberations before the completion of the trial and to evaluate the evidence solely on the basis of the written outline given them, in spite of the complete absence of those instructions critical to a fair verdict." (111 AD2d, at p 637.)

In affirming, the Court of Appeals observed: "By permitting, even encouraging, the jurors to refer to the written outline during trial, the court invited piecemeal, premature analysis of the evidence. The court's outline in effect served as a checklist against which jurors could measure the evidence as it came in, with the attendant danger that jurors would conclude defendant was guilty even before he could present evidence or argument. That danger was heightened here by the fact that the issues of voluntariness and credibility, both central to the defense, were not part of the outline." (67 NY2d, at p 817.)

While we decline to hold that the procedure in all cases constitutes reversible error, under the facts of this case, it did impinge upon defendant's right to a fair trial. The preliminary instructions, both oral and in written form, went beyond the "general" instruction authorized by CPL 270.40 (see, Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 270.40, p 502; see also, People v Newman, 46 NY2d 126, 129-131). The instructions here were unbalanced, dealing with selected legal principles and omitting any reference to presumption of innocence, reasonable doubt, burden of proof and the critical issue of credibility. This created a potential for prejudice since the written instructions may have conveyed the impression that the jury was to or should place greater stress upon what the court submitted in writing than to other fundamental principles.

In addition, this was a close case, which turned on the credibility of the two key witnesses, who gave divergent accounts of the circumstances of the crime. For the prosecution, undercover Officer Britt testified that it was defendant who returned to the social club with the drugs and gave him change for the money he had previously given to defendant. For the defense, defendant testified that he received no money and purchased no drugs for Britt. Under the facts of this case, the selective instructions, omitting any reference to funda-

mental legal principles favorable to the defense, were prejudicial.

Similarly improper was the submission to the jury, at the close of the case, of written selected portions of the court's charge for use during its deliberations. Defense counsel objected, arguing that it might permit the jury to usurp the function of the Trial Judge in interpreting the law, instead of returning for further instructions from the court if there were questions during deliberations.

The court's final charge here was not extensive, covering only 13½ pages in the transcript. Nevertheless, the Trial Justice submitted to the jury in written form the elements of criminal sale of a controlled substance in the third degree, acting in concert and identification, without the countervailing legal principles favorable to the defense. This resulted in an unbalanced charge which deprived defendant of his right to a fair trial.

While we do not hold that the procedure amounts to error per se in all cases, under the facts here, the submission resulted in an unbalanced charge since it highlighted certain principles to the exclusion of others. The jury could readily infer that the court considered the written instructions to be the jury's paramount concern and the others, orally given, subordinate in importance. This unfairly prejudiced the defendant's rights so as to deprive him of his right to a fair trial.

Accordingly, we reverse and remand the case for a new trial. Concur—Carro, Fein, Kassal and Ellerin, JJ.

Sullivan, J. P., dissents in a memorandum as follows: In this factually unremarkable case involving the sale of drugs to an undercover officer, the majority finds that Trial Term's distribution to the jury in written form of portions of its preliminary instructions and final charge deprived defendant of a fair trial. I cannot agree.

Defendant was convicted of criminal sale of a controlled substance in the third degree. The facts may be briefly summarized. At about 1:40 in the afternoon of November 3, 1981, undercover Officer Britt and the five other members of a "buy operation" field team, acting upon an informant's tip, proceeded to the vicinity of 752 East 168th Street in The Bronx, where, at a social club located at that address, a drug purchase was planned.

After parking nearby and making radio contact with the officers in his backup unit, who were stationed in two parked automobiles less than a block away, Officer Britt entered the

social club. Once inside, he spoke to a man, later identified as Gregory Grayson, and asked if he had any "quarters." Told that he had, Britt negotiated a purchase of eight quarters for $340. Grayson then summoned defendant, whom Officer Britt had often seen in the neighborhood and recognized, from the street. At Grayson's direction, Britt handed $350 to defendant, who, taking Britt's money, left the social club and returned about five minutes later with eight glassine envelopes of white powder and $10 change. Other than the participants, no one else witnessed the incident.

Officer Britt then left the club and proceeded to a prearranged rendezvous at 161st Street and Brook Avenue near the 42nd Precinct station house, where he met his supervisor and showed him the eight glassine envelopes, which he promptly vouchered. Later that evening, Officer Britt delivered the glassine envelopes to the police laboratory for analysis. The white powder was found to contain heroin. Defendant was arrested approximately five weeks later, on December 11, 1981, in a grocery store next door to the social club.

Taking the stand in his own behalf, defendant testified that at the time of the incident he was employed as a maintenance man at 752 East 168th Street. According to defendant, he had been in the social club several times on November 3, 1981 and on one of those occasions he had seen Britt, whom he knew from the neighborhood. Defendant did not speak to Britt that day, however, and he did not take part in any drug transaction. Defendant conceded that at the time of his arrest he told the arresting officer that he was employed as a garment presser.

In its preliminary charge, the court, after advising the jury on general trial procedure and its duties in particular, then outlined the elements of the crime charged and stated the governing legal principles with respect to proving identity and acting in concert. At the conclusion of this portion of its preliminary charge, the court distributed a six-page document containing that part of the charge which it had just given orally, namely, its statement of the law with respect to the elements of the crimes charged, acting in concert and proving identity. This document also included a preface which explained that the printed matter was being provided "so that you will have some idea of what to look for and what to listen to during the course of the trial." While the People objected to the entire procedure and especially to that portion of the written instructions which told the jury to consider whether an in-court identification was the product of a suggestive

showup, defendant's only objection was to the jury's taking the written instructions into the jury room at the time of deliberations.

After summations, but before it charged the jury, the court informed counsel that it would retrieve its written preliminary instructions and distribute to the jury a four-page document containing that part of its charge with respect to the elements of criminal sale of a controlled substance in the third degree, acting in concert and proving identity. This document differed from the previously distributed six-page document only to the extent that it specifically informed the jury as to how it was to evaluate Officer Britt's testimony. Defendant's counsel objected, arguing that the written charge would encourage the jury to interpret the law and inhibit it from seeking judicial guidance during deliberations. With defendant's objection noted, the court charged the jury and then distributed the written instructions, orally admonishing the jurors: "[T]he fact that I give you this in writing does not mean I want to emphasize that over anything else I've said in my instructions."

Defendant maintains that he was deprived of a fair trial because the court's written preliminary instructions encouraged the jury to deliberate prematurely and effectively unbalanced the presentation of the case as they brought to the jury's attention only those portions of the instructions relating to his guilt. In addition, defendant alleges that the distribution of the written portions of the final charge exacerbated the error because they too were unbalanced and also encouraged juror interpretation of the law. In my view, these claims, to the extent they are preserved at all, are entirely lacking in merit.

Initially, it should be noted, defendant's arguments concerning the preliminary instructions have not, as a matter of law, been preserved for appellate review in light of his failure to register any objection on the grounds now asserted. (See, CPL 470.05 [2].) At trial, his sole concern was that the jurors might take the written instructions with them into the jury room at the time of deliberations. Indeed, as to their substance, these instructions, which, as already noted, told the jury, *inter alia,* to consider whether a prior suggestive showup tainted any in-court identification, were considered so beneficial to defendant that they elicited an objection only from the prosecutor. Given the strength of Officer Britt's identification testimony—he had observed defendant on numerous previous occasions in the

neighborhood—and defendant's own testimony that he was present in the social club at the time of Britt's visit on November 3, 1981, as well as the apparent lack of any motive on Britt's part to inculpate defendant falsely, it is readily apparent why the jury accepted the officer's version of the incident and rejected defendant's denial of any involvement in the sale. Indeed, the jury deliberated for only two hours and three minutes before reaching its verdict. Thus, there is no reason to invoke this court's interest of justice jurisdiction to address defendant's argument concerning the written preliminary instructions.

Admittedly, the submission of written portions of the oral preliminary instructions was found by this court in *People v Townsend* (111 AD2d 636, *affd* 67 NY2d 815), in the circumstances of that case, to have impinged on the defendant's right to a fair trial. Even if defendant's particular claims with respect to the preliminary instructions were to be addressed in the interest of justice, *Townsend* should not control, however, for several compelling reasons. Unlike *Townsend,* the underlying facts here do not peculiarly lend themselves to the argument that the absence of a particular charge in the written preliminary instructions prejudiced the defendant. For example, in *Townsend,* the People's case was based primarily on the defendant's confessions to the police and friends. In fact, the trial court had instructed the jury to acquit if it did not find any of the statements to be voluntary and truthful. Yet, in its written preliminary instructions it failed to instruct the jury as to how it should evaluate the voluntariness of statements. Given the critical role that the claimed involuntariness of these statements played in his defense, this court concluded that the omission of any instructions as to the manner of resolving that issue or of evaluating the credibility of the witnesses who testified about the statements clearly prejudiced the defendant. In affirming this court's decision, the Court of Appeals highlighted this omission.

In contrast, the only defense here was that the undercover officer had mistakenly identified defendant or had not engaged in a drug deal with anyone. In its written preliminary instructions, the court, anticipating the mistaken identity argument, provided the jury with the means to evaluate such a defense. Instructing them at length as to the manner in which to weigh identification testimony, the court was not remiss, as it was found to be in *Townsend (supra),* in failing to furnish the jurors with the necessary guidelines to enable them to scrutinize a critical aspect of the People's case. Thus, unlike *Town-*

*send,* the written preliminary instructions here did not place defendant at a disadvantage before any testimony was taken.

Furthermore, in *Townsend (supra),* this court found that the inclusion in the written portion of the preliminary instructions of the affirmative defense to felony murder and the elements of intentional murder, felony murder and robbery in the first degree and the exclusion of all but the felony murder charge from the final written charge might have led the jury to believe that the defendant had no viable defense and that, of the original three crimes charged, felony murder was the one of which he was guilty. The danger of such juror misperception is not present here since there were no defenses or other charges included in the court's written preliminary instructions.

Moreover, here, in further contrast to *Townsend (supra),* the written preliminary instructions were carefully balanced, juxtaposing the elements of the crime the People had to prove against the defense of mistaken identity. If anything, judging by the People's objection to its content and defendant's tacit approval, the preliminary charge favored defendant. Thus, the prejudice with which the court was concerned in *Townsend*— the ready availability to a jury of an unbalanced and potentially misleading charge as the evidence unfolds—is not present here.

Finally, while the facts in *Townsend (supra)* may have presented an inappropriate case for the use of written preliminary instructions setting forth the elements of the crimes charged without an explanation of such critical matters as the manner in which to assess the voluntariness of statements and the credibility of witnesses, the recitation of the elements of a crime cannot be viewed, as an abstract proposition, as anything but a neutral charge. Such a statement merely memorializes what it is that the People must prove before guilt may be found. Since the charge-in-chief must include the instruction that the People are obliged to establish each and every element of the crime charged beyond a reasonable doubt, such a charge favors neither side and serves to focus the jury's attention on the ultimate issue which it must resolve. Thus the holding of *Townsend* should be limited to those cases where, given a particular factual pattern, there is a likelihood that, as a result of incomplete written preliminary instructions, the jury will fail to give proper consideration to a defense or conclude that it is without merit. In any event, that is not the case here.

Defendant's other argument, that the court erred in distrib-

uting written portions of its final instructions to the jury, is equally meritless. At the trial defendant never claimed, as he does now, that these instructions were unbalanced. His wholly unsupportable claim that they encouraged juror interpretation of the law is plainly frivolous. Moreover, CPL 310.30, upon which defendant relied, but which he did not invoke at Trial Term, was never intended to limit the types of materials a jury may take with it upon retiring to deliberate. It addresses another concern, namely, the manner in which a court should respond to a deliberating jury's request for information. CPL 310.20, similarly relied upon but never invoked at the trial, does limit the types of materials a jury may take with it to deliberate. This section, however, was in existence in 1977 when this court, in *People v Maye* (58 AD2d 782), upheld the written submission of portions of a court's charge provided that the oral charge otherwise sufficiently explains all the pertinent legal principles.

Accordingly, the judgment should be affirmed.