OPINION OF THE COURT
Donald J. Mark, J.
The defendant was charged with the crime of criminal contempt, first degree, in violation of Penal Law § 215.51 for refusing to answer questions asked of him before a Grand Jury. The Grand Jury was investigating the crimes of robbery, assault and larceny allegedly committed by a named individual, and the defendant based his refusal upon his fear that he faced death or serious physical injury if he testified. The defendant thus invoked the defense of justification as provided for in Penal Law § 35.05 (2). At the trial the transcript of the Grand Jury proceeding was introduced into evidence by the People, and it was replete with references by the defendant that his only reason for his failure to testify was his apprehension of being assaulted; the defendant also testified in great detail in support of this defense. The prosecutor objected to the court’s charging the jury that it should consider this defense, but over the prosecutor’s objection the jury was so instructed and the defendant was found not guilty.
This decision is prompted by two statements in People v Gumbs (124 Misc 2d 564, 566, 568) that "Justification as a defense to a finding of contempt is not well established under New York case law but there are indications that the trend is toward acceptance of the defense under proper circumstances”, and that "in no reported case has the defense successfully been asserted”.[1]
Section 35.05, captioned "Justification; generally” provides insofar as applicable to this case as follows: "conduct which would otherwise constitute an offense is justifiable and not criminal when * * * 2. Such conduct is necessary as an emergency measure to avoid an imminent * * * private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury *781 sought to be prevented by the statute defining the offense in issue”.
Subdivision (2) is addressed to an area of technically criminal behavior which virtually no one would consider improper but which has never expressly been declared justifiable either by statute or case law. Dubbed the "choice of evils” doctrine, this principle is designed to cover very unusual situations in which some compelling circumstance or "emergency” warrants deviation from the general rule that transgression of the criminal law will not be tolerated (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 35.05, p 82).
The cases decided after the enactment of section 35.05,[2] without any reference thereto, held that as a matter of law, fear for one’s life did not justify a refusal to answer proper questions (People v Clinton, 42 AD2d 815 — witness found to be in contempt for refusing to testify during a trial, because every person owes a duty to the State to testify, and fear for one’s life or the life of one’s child was not a legal reason to refuse to answer questions; People v Forsyth, 109 Misc 2d 234 —witness convicted of misdemeanor for failure to obey subpoena, because his excuse was unsatisfactory, and religious scruples, possible damage to business or even fear for one’s life are not defenses to a criminal contempt charge, citing People v Clinton, supra). The first decision in which this section was held applicable to a charge of criminal contempt, albeit under subdivision (1), was People v Lennon (115 Misc 2d 738, affd sub nom. Matter of Balter v Regan, 97 AD2d 953, affd 63 NY2d 630), although the issue was resolved against an attorney who refused to proceed to trial because of a conflict of interest.
Lennon (supra) was followed by two cases which determined that subdivision (2) of this section under proper circumstances could be a defense to a criminal contempt charge for failing to testify (Matter of Fuhrer v Hunes, 72 AD2d 813; People v Gumbs, supra). Führer involved a witness who had been adjudged in criminal contempt based upon his refusal to answer questions before a Grand Jury. The appellate court stated that for justification to apply the impending injury must clearly outweigh the injury sought to be prevented. The defense of justification was ultimately rejected, because the loss of the witness’ ministry was clearly outweighed by the *782 loss of the witness’ testimony. In Gumbs a witness who refused to testify at trial because his life and the lives of his family were in jeopardy was found in contempt. The trial court held that the defense of justification because of fear of retaliation was available to a contempt charge, but that it was not applicable under the facts in that case. That court reasoned that the witness did not sufficiently establish that he had been threatened, had refused offers of protection from the District Attorney, and had resided in the same neighborhood as the defendant who was released on bail for two years.
The defendant in this case testified as follows: He was serving a sentence in a State correctional facility; prior to his sentence the potential defendant described to him in lurid detail life in State prison including the fate meted out to "snitches”; he witnessed vicious assaults on "snitches” while in State prison; he was the victim of assaults for no apparent reason; the inmates who committed the assaults were huge weight lifters; in prison he had been informed that "snitches” were in serious jeopardy, and that if he ever "snitched” he would not leave prison alive; it was common knowledge that he was being transferred from his prison to the local jail for the purpose of testifying, although he himself was not certain and told only a few trusted inmates; he was warned of the dire consequences that awaited him if he "snitched”; at the local jail he was called a "snitch” despite the fact that he talked to no prisoners about his reason for being there; he was cut in the head while weight lifting in the local jail by an unknown prisoner and considered this a warning; he was aware that inmates in State prison in some mysterious manner acquired knowledge of matters occurring outside of prison; he was fearful if he testified he would be either seriously injured or killed; there was no way he could protect himself or be protected from such a serious or fatal assault; no protection was offered to him although he requested some guarantee of safety if he testified; the potential defendant never threatened him but he believed it was the unwritten code in prison that "snitches” be punished; and for these reasons he was afraid to testify before the Grand Jury.[3]
Because the defendant based his claim of justification on that evidence, his state of mind became a crucial fact in issue in this case (People v Miller, 39 NY2d 543; People v Green, 98 AD2d 908). The court felt that this evidence viewed in a light *783 most favorable to the defendant supported such a defense and it warranted submission of the same to the jury (People v Watts, 57 NY2d 299; People v Ruiz, 96 AD2d 845).
The court charged the jury in essence that it should apply an objective standard and determine whether or not based upon certain described circumstances a reasonable individual in the same situation as the defendant (People v Goetz, 68 NY2d 96) would have reasonably believed that he risked an assault which could result in serious physical injury or death if he testified before the Grand Jury. The jury was further instructed that section 35.05 (2) was composed of three elements, which were correlated to the evidence in this case, and that the People had the burden of proving beyond a reasonable doubt that all or any one[4] of the three components were or was not present in order for the defense of justification not to be applicable (People v Reed, 40 NY2d 204; People v Comfort, 113 AD2d 420).
After the jury had begun its deliberations it requested that it be reinstructed on the law of justification; the same communication requested that such instruction be in writing. Relying upon People v Maye (58 AD2d 782) and again over the prosecutor’s objection, the court submitted to the jury a copy of its charge on justification.
The Court of Appeals has twice condemned the presentation of written outlines of the elements of the crimes to the jury at the beginning of the trial (People v Vincenty, 68 NY2d 899;[5] People v Townsend, 67 NY2d 815). In People v Compton (119 AD2d 473), the trial court distributed to the jury prior to the proof unbalanced written instructions concerning the elements of the crime, acting in concert and identity, omitting any reference to presumption of innocence, reasonable doubt, burden of proof and the critical issue of credibility. These were collected after the trial and another set of similarly unbalanced written instructions were presented to the jury for use during their deliberations. The Appellate Division, First Department, the same appellate court which decided Maye (supra), citing Townsend (supra), disapproved both procedures.[6] While at first blush this trilogy of cases seems to be dispositive *784 of this issue of written instructions, they are quite distinguishable. All three cases involved unsolicited preliminary instructions, and Compton (supra) alone also involved unsolicited final instructions. In this case the jury requested written instructions upon the one point that was perplexing it, and the court responded.
The following language in Maye (supra, p 783) approves such action: "Although there is no specific statutory authority to submit written instructions to the jury, courts of this State as well as in other jurisdictions have sanctioned the practice of submitting written portions of the charge to the jury where the defendant is unable to demonstrate * * * prejudice therefrom * * * 'we think it is frequently desirable that instructions which have been reduced to writing be not only read to the jury but also handed over to the jury * * * We see no good reason why the members of a jury should always be required to debate and rely upon their several recollections of what a judge said when proof of what he said is readily available’ [quoting from Copeland v United States, 80 US App DC 308, 309]).”[7] Compton (supra, p 476) likewise indicates approval of this practice in the following terminology: "While we do not hold that the procedure amounts to error per se in all cases, under the facts here, the submission resulted in an unbalanced charge since it highlighted certain principles to the exclusion of others.” Again, it should be noted that here there was no unsolicited presentation of written instructions.
Thus, the defense of justification under Penal Law § 35.05 (2) was properly charged to the jury under the alleged factual predicate of this case, and the court’s affirmative response to the jury’s request for written instructions on this defense was likewise proper.

. This quote probably refers to Federal decisions, but research has shown that the same is true of State cases also.

. This statute became effective September 1, 1967.

. The defendant’s testimony obviously has been paraphrased.

. The jury specifically inquired whether the disproof of one element negatives this defense and were instructed in the affirmative.

. The People v Vincenty decision (68 NY2d 899) was issued after this trial was completed.

. There was a dissent by one Justice who referred to People v Maye (58 AD2d 782).

. This court recalls a trial where the jury first requested elements of the crime in writing, and when initially rebuffed, repeatedly asked to have the elements read back to it. It was assumed, and confirmed after the trial, that the jurors were memorizing the elements and reducing them to writing immediately upon their return to the jury room. The jury was eventually spared this sophistry, with resort to People v Maye (58 AD2d 782).