■ In the Matter of WATERFRONT COMMISSION OF NEW YORK HARBOR, Respondent. RAYMOND LAMAS, Appellant. [665 NYS2d 82] —Judgment, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered May 20, 1997, adjudging respondent-appellant in contempt for refusing to testify pursuant to a subpoena issued by petitioner-respondent, unanimously reversed, on the law, and the facts, without costs, and the matter remanded for a hearing to explore the gravity and sincerity of respondent's fears of physical retribution should he testify, measures available to mitigate his fears, and to give respondent an opportunity to meet his burden of demonstrating that incarceration would be punitive rather than merely coercive.

In 1992, respondent was convicted of conspiracy in Federal court for his participation in the 1989 theft of two containers of seafood from the Howland Hook Terminal in Staten Island. In connection with his 1991 guilty plea as well as in interviews with investigators from the Waterfront Commission and the Staten Island District Attorney's office, he implicated Joseph Bilotti and others. Subsequently, respondent refused to testify before the Federal Grand Jury, despite being granted use immunity, about Bilotti's role in the theft. Although respondent invoked his Fifth Amendment privilege at that time, he was held in civil contempt and incarcerated for four months, after which time the Federal District Court (Sterling Johnson, J.) concluded that respondent would not testify, and that the sanction had lost its coercive effect and had become punitive.

Bilotti's longshoreman registration had been revoked by petitioner Waterfront Commission in 1987. Bilotti's 1996 application for reinstatement remains unresolved pending the Commission's investigation into his role in the 1989 theft. On November 6, 1996, the Commission subpoenaed respondent to testify on November 19, 1996, in connection with its investigation concerning Bilotti and his role in the 1989 theft. The subpoena stated that the questioning would address "waterfront practices and conditions generally within the port of New York," although the Commission contends that the investigation's scope involves only the 1989 theft.

Respondent appeared *pro se* before the Commission, acknowledged having given a prior statement, but now acknowledged that it was not entirely true; when he invoked his right to counsel, the interview was terminated. Respondent subsequently moved to quash the subpoena, alleging that he had refused to testify out of fear for the safety of himself and his family; that he previously had been willing to be incarcerated to avoid testifying; and that he now invoked his Fifth Amendment privilege. In response to the motion to quash, the Commission argued that there was no factual basis for respondent's claims of fear and that, in any event, even if established, that would not provide a legal basis for his refusal to testify. With regard to the claim of constitutional privilege, the Commission noted, correctly, that a blanket claim of privilege could not be invoked prior to questions actually having been asked. By order entered March 21, 1997, Supreme Court denied the application to quash, and directed respondent to appear and respond to specific questions, at which time he could avail himself of the Fifth Amendment privilege. This order did not address respondent's justification defense. Respondent appeared before the Commission again on April 2, 1997, at which time he invoked the Fifth Amendment privilege and refused to testify in response to questions specifically directed to the 1989 theft.

The Commission then moved by order to show cause to hold respondent in contempt, claiming that the privilege was improperly invoked and that respondent's refusal to answer was without legal justification. Although respondent was directed to appear and show cause, the court's final order summarily adjudged him in contempt, unless such contempt was purged within a specified time period. Once again, the order failed to address the justification issue.

Judiciary Law § 753 (A) (5) authorizes a contempt finding in this case, issuable as a final order (§ 770). A section 753 contempt proceeding, though, is subject (*see,* § 754) to the

requirements of section 756 that the application, including one made by order to show cause, be "heard and determined." Although the Judiciary Law provides for summary contempt adjudications when the conduct occurs in the "immediate view and presence of the court" (§ 755), that exception is presently inapplicable. Rather, "[u]pon the return of an application to punish for contempt, the questions which arise must be determined, as upon any other motion" (§ 772). The factual issue of personal safety explaining respondent's non-responsiveness has yet to be heard and determined, and requires remand.

Justification is not a codified defense to contempt in the Judiciary Law. Contempt adjudged under the Judiciary Law may be prosecuted criminally under Penal Law §§ 215.50 and 215.51 (*see,* Penal Law § 215.54), theoretically triggering the justification defense therein. Although denoted a "defense" by respondent, he has not been charged criminally with contempt, rendering Penal Law § 35.05 (2) inapplicable. Nevertheless, the incarceratory consequence of this contempt adjudication suggests the need in equity for an opportunity for a contemnor to demonstrate his inability, arising from imminent peril, to comply with the order, a result which accords with analogous Federal case law, *infra.*

While we do not pass on the merits of the allegations contained in the record (*compare, e.g., People v Joy,* 133 Misc 2d 779; *see also, People v Gumbs,* 124 Misc 2d 564), factual issues concerning the putative justification were left unresolved prior to the adjudication. The threat of incarceration triggers due process concerns requiring here, at a minimum, a hearing (*supra*; *see also, Matter of Kitchen,* 706 F2d 1266, 1272) to establish "the gravity and sincerity of his fears" (*Matter of Grand Jury Proceedings Empanelled May 1988,* 894 F2d 881, 887).

Accordingly, we remand for a hearing to allow respondent to make a particularized record of his fears of retribution causing imminent peril to himself or his family, as well as to give respondent an opportunity to meet his burden of demonstrating that there is no reasonable possibility that further confinement will cause him to testify.

In view of the constitutional protection against double jeopardy, though, our concern does not extend to the Fifth Amendment claim so long as the investigation is limited to the 1989 theft for which respondent already has been convicted. The claim that he will be subject to a perjury prosecution, raised for the first time in the appellate reply brief, is not properly before this Court (*see, O'Sullivan v O'Sullivan,* 206 AD2d 960;

*Matter of Lupovici v Sobol*, 223 AD2d 753, n). We have considered appellant's remaining claims and find them to be without merit. Concur—Wallach, J. P., Nardelli, Tom, Mazzarelli and Colabella, JJ.